Argued April 3, petition dismissed November 15, 1978

# In the Matter of the Constitutionality of the
## OREGON MASS TRANSPORTATION
## FINANCING AUTHORITY
### (SC 25519)
586 P2d 784

Leslie M. Roberts, Portland, argued the cause for petitioners Tri-County Metropolitan Transportation District of Oregon, Lane County Mass Transit District, and Glenn L. Jackson. With her on the brief was Kell, Alterman & Runstein, Portland.

Jan P. Londahl, Assistant Attorney General, Salem, argued the cause for the Oregon Mass Transportation Financing Authority. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

George A. Rhoten, Salem, argued the cause for intervenor Jack Ripper. With him on the brief were David A. Rhoten, and Rhoten, Rhoten & Speerstra, Salem.

HOLMAN, J.

## HOLMAN, J.

The 1977 legislature enacted the Oregon Mass Transportation Financing Act (1977 Or Laws ch 662, now codified at ORS 267.227 and 391.500-391.660 and appended Note). In this original proceeding, which is brought pursuant to Section 20 of the Act, we are asked to determine the Act's constitutionality.

The Act, briefly summarized, creates the Oregon Mass Transportation Financing Authority and authorizes the Authority to assist mass transit districts established under ORS 267.010 to 267.390 in financing transit facilities. Funds for this financial assistance are to be raised by the issuance of bonds of the Authority. The bonds are payable out of the monies received by the Authority from the mass transit districts in payment of loans made by the Authority to the districts or from the lease or sale by the Authority to the districts of transit facilities.

The Act contains detailed provisions for carrying out the financing plan and also provides in Section 20:

"(1) Jurisdiction for the determination of the constitutionality of this Act is vested exclusively in the Supreme Court of the State of Oregon.

"(2) The chairman of the Oregon Transportation Commission or any interested person may petition the court for determination of the constitutionality of this Act within 30 days of its effective date.

"(3) A petition for determination of constitutionality under this section shall bear the caption: 'In the Matter of the Constitutionality of the Oregon Mass Transit Financing Authority.' The nature of the proceeding shall be in rem and the procedure shall follow the procedure of courts of equity. Jurisdiction of the authority and of all other potential parties shall be acquired pursuant to ORS 33.720.

"(4) Upon the filing of a petition for determination, the court shall hear the matter within 180 days. Interested persons may file briefs and present arguments on such conditions and within the time the court may specify."

[ 243 ]

A timely petition was filed requesting a determination that the Act is constitutional. Petitioners are the Chairman of the Oregon Transportation Commission and two mass transit districts. The Authority is named in the petition as respondent, but did not file any pleading. At our request, the Attorney General filed a brief on the Authority's behalf. The Attorney General's brief supports the constitutionality of the Act. We allowed the petition of Jack Ripper that he be permitted to intervene in order to assert that the Act is unconstitutional.

We asked the parties to brief the question whether this proceeding presents a justiciable controversy. In *Oregon Medical Association v. Rawls,* 281 Or 293, 574 P2d 1103 (1978) ("*OMA II*"), we held that a similar proceeding to have a statutory scheme declared constitutional did not invoke the judicial power of the state which is vested in the courts by Article VII (amended), § 1, of the Oregon Constitution. In that case there was no controversy whatsoever between the parties; both contended that the statute was constitutional. The legislature had attempted to provide in advance for that eventuality by providing that "a justiciable controversy ripe for determination shall be deemed to exist" upon the mere filing of a petition for a determination of constitutionality. We held that attempt to be ineffectual, pointing out that the presence of a party raising a specific constitutional challenge for determination was "essential to responsible adjudication." 281 Or at 298. We pointed out that in *Martin v. Oregon Building Authority,* 276 Or 135, 554 P2d 126 (1976), which was brought under a provision for constitutional review in this court similar to Section 20 of the present Act, the petitioner had asserted a specific constitutional attack upon the statute. A court cannot, we held in *OMA II,* adjudicate "constitutionality in the abstract"; that is, the judicial power does not extend to a determination that a statute can never be successfully challenged in the

future on any possible constitutional ground. 281 Or at 298-99.

■ Section 20 of the Act appears to contemplate just such a determination. It does not require the naming or the presence of adverse parties, nor does it require the petitioner to allege the existence of a controversy about the constitutionality of the Act. We would not, however, refuse to consider a justiciable controversy over which Section 20 gives us original jurisdiction merely because the statute also appears to authorize proceedings which do not meet that test. Instead, we examine the issues actually before us.

The petition alleges that the Authority "is unable or unwilling to proceed with the statutory program contemplated in [the Act] in the absence of a clear declaration that [the Act] is constitutional as enacted" and requests us to determine that the Act "complies with the Constitution of Oregon and is effective as enacted."

We allowed petitioners to place in the record the minutes of the Authority's organizational meeting. The minutes show that the petitioner transit districts presented to the Authority proposals for financing through the Authority certain mass transit equipment and facilities. By resolution, the Authority "decline[d] to proceed with consideration" of the districts' proposals "for the reason that the Authority is unable or unwilling to proceed with such financing in the absence of a determination that the Authority and the statutory enactment under which it is created is constitutional."

Even if we treat the minutes as though they were a part of the petition, the petition presents no constitutional issue for adjudication. Neither does the respondent Authority supply any constitutional controversy. Its only response is the brief of the Attorney General which was solicited by the court. This brief, as in the case of the petition, asserts the constitutionality of the Act. Therefore, there is no constitutional controversy

between the original parties in this proceeding. It is impossible for this court, or for any other court, to make a principled adjudication of constitutionality in the vacuum which results from the lack of such controversy, to anticipate all possible claims of constitutional imperfection in every context that may arise concerning this or any other statutory scheme. Without an actual challenge which calls into question the constitutionality of some particular aspect of the Act, the duty placed upon us by Section 20 is an impossible one and does not invoke the judicial power of the court vested by the Constitution. An adjudication of constitutionality is necessarily a response to a claim of unconstitutionality and, as we have previously said, cannot be made in the abstract.

■ At most, if liberally construed, the petition discloses a controversy as to whether the Authority, when requested by a transit district to perform the function for which it was created, may refuse to do so on the ground that the legislation creating it has never been held by a court to be valid. Thus, the only controversy disclosed by the allegations of the petition concerns the limits of the Authority's discretion to refuse to act. That question involves not the constitutionality of the legislation but only its proper construction.

It may be that the allegations of the petition, thus construed, present a justiciable controversy appropriate for determination in a suitable proceeding. Such a controversy is not, however, within the original jurisdiction of this court as defined in Section 20 of the Act. Our jurisdiction under that section is limited to determining questions of constitutionality.

■ It is urged, however, that this proceeding does involve a controversy over constitutionality because of the presence of an intervenor who asserts that the Act is unconstitutional in certain particulars. However, in the absence of a petition or a response disclosing a controversy within our original jurisdiction under Section 20, there was no proceeding before this court

in which to intervene. Intervention for the purpose of presenting arguments on issues which would be within the jurisdiction conferred by the legislature, were it properly invoked, cannot take the place of essential allegations in the petition. One cannot intervene in a proceeding which the court has no authority to entertain in the first place, and our order allowing intervention was in error.

In *Walsh Const. Co. v. Smith,* 272 Or 398, 537 P2d 542 (1975), under circumstances very similar to those now before us, we proceeded to determine issues involving the constitutionality of a statutory scheme. In response to the argument that to do so would be to render an advisory opinion,[1] we said:

> "In the present case a controversy has arisen. The petitioner, Walsh Construction Co., is a builder of low-income housing and as such is eligible to become a 'qualified housing sponsor' as defined in ORS 456.615 (14). Thus, petitioner is eligible to apply for and receive mortgage loans and financial assistance from the Housing Division, which in turn would be funded by the proceeds of the revenue bonds * * *.

> "The petition alleges, and it has not been denied, that the respondent, as the administrator of the State Housing Division, is unable or unwilling to issue revenue bonds and proceed with the program contemplated in the 1973 Act in the absence of a clear declaration that ORS 456.720 (5) as amended by the 1975 Act, is constitutional.

> "Whatever reason the administrator advances for refusing to issue the bonds, the petitioner is adversely affected by the administrator's inaction and out of this divergence of positions a controversy arises. Moreover, the intervenors, who are given standing under Section 2 of the Act, have clearly created a controversial issue by appearing in these proceedings with the contention that the Act is unconstitutional." 272 Or at 406-07.

*Walsh* is not distinguishable from the present case. The statute providing for a "determination of constitutionality" by this court was similar to Section 20 in all

---

[1] *See In re Ballot Title,* 247 Or 488, 492-95, 431 P2d 1 (1967).

relevant respects. As was the case in *Walsh,* petitioners here are eligible for benefits under the Act and are adversely affected by the Authority's inaction. There is also an intervenor who raises constitutional objections to the statute.

Although we concluded in *Walsh* that there were justiciable issues presented by both the petition and the contentions of the intervenors, we were, nevertheless, mistaken in proceeding to the merits in that case.[2] Like Section 20 under which the present proceeding is brought, the statutory provision authorizing the proceeding in *Walsh* gave us jurisdiction only to determine questions of constitutionality. Like the petition in the present case, the petition in *Walsh* did not disclose a controversy involving constitutionality of the statute, but at most one involving whether the agency was entitled to refuse to perform its statutory functions for the reasons asserted. We should have noted our lack of original jurisdiction.

■ It is our obligation, whether or not any objection to our jurisdiction is raised by the parties, to refuse to proceed where jurisdiction is lacking.[3] We have concluded that it is lacking here. That conclusion is not based on the lack of a justiciable controversy between the intervenor and any or all of the other parties.[4] We

---

[2] *See also Oregon Medical Assn. v. Rawls,* 276 Or 1101, 557 P2d 664 (1976) ("*OMA I*") in which we indicated in dictum that intervention by parties asserting unconstitutionality had created a justiciable controversy in a declaratory judgment proceeding in circuit court in which the complaint requested a decree that an entire statutory scheme was constitutional. The complaint in that case did not disclose any controversy between the original parties.

[3] *McCain v. State Tax Comm.,* 227 Or 486, 495, 360 P2d 778, 363 P2d 775 (1961); *McEwen et ux v. McEwen et al,* 203 Or 460, 470, 280 P2d 402 (1955).

[4] In *Walsh Const. Co. v. Smith,* 272 Or 398, 537 P2d 542 (1975), the parties to whom we referred as "intervenors" were permitted to appear as "interested parties" under a provision like that in subsection (4) of Section 20, quoted above. In the present case a petition was filed requesting leave to "intervene." See ORS 13.130. Any difference which there may be between the status of intervenor in this case and that of the interested parties in *Walsh* is not important to the rationale of our decision here.

do not reach the question whether such a controversy exists. Our conclusion rests on the bases that the petition and response thereto disclose no constitutional controversy which invokes the judicial authority of this court under Article VII (amended), § 1, of the Oregon Constitution, that the controversy which is disclosed is not of constitutional dimension so as to invoke this court's original jurisdiction granted by the legislature under Section 20 of the Act, and that the intervenor may not intervene in a proceeding which this court had no authority to entertain in the first place.

The petition is dismissed.