On respondent-cross-appellant's motion to dismiss appeal filed October 10, appeal dismissed; cross-appeal dismissed December 7, 1983, reconsideration denied January 6, petition for review allowed, reversed and remanded to the Court of Appeals See 296 Or 711, 678 P2d 268 (1984)

## CUSTOM HARVESTING OREGON, INC.,
*Respondent-Cross-Appellant,*

*v.*

## SMITH TRUCK & TRACTOR, INC et al,
*Appellants-Cross-Respondents.*

(80-4-377; CA A29526)

672 P2d 1364

Michael B. Collins, Pendleton, for the motion.

Kathleen A. Dodds, John P. Davenport and Sussman, Shank, Wapnick, Caplan & Stiles, contra.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

PER CURIAM

Van Hoomissen, J., dissenting.

## PER CURIAM

This matter is before us on plaintiff's motion to dismiss the appeal. We allow the motion.

Defendants filed the notice of appeal within 30 days after the trial court denied their motions for judgment notwithstanding the verdict and for a new trial. ORS 19.026(2)(a). They designated "the record in addition to the trial court file in its entirety." They caused the notice of appeal to be served on two of the three court reporters who reported the trial. ORS 19.023(2)(c). The third reporter was not served until 40 days after the denial of defendants' motions.

ORS 19.033(2) provides:

"The serving and filing of the notice of appeal as provided in ORS 19.023, 19.026 and 19.029 is jurisdictional and may not be waived or extended."

Defendants' failure timely to serve the notice of appeal on a court reporter who, in defendants' words, "reported the last several days of the trial" deprives this court of jurisdiction. *McQuary v. Bel Air Convalescent Home, Inc.*, 64 Or App 528, 669 P2d 348, *rev allowed* 296 Or 56 (1983).

The dissent recites the fact that plaintiff has not claimed to be prejudiced, as though that makes a difference. "It is our obligation, whether or not any objection to our jurisdiction is raised by the parties, to refuse to proceed where jurisdiction is lacking." *In re Oregon Mass Transp. Fin. Auth.*, 284 Or 241, 586 P2d 784 (1978).[1]

The dissent, decrying a "hard line" on these unambiguous statutes, would rewrite them to provide no line at all. That is not our business, and we decline to do it.

Plaintiffs cross-appealed. Because we dismiss the appeal and because the notice of cross-appeal was not filed within the time allowed for filing a notice of appeal, we dismiss the cross-appeal on our own motion.

---

[1] In *McCain v. State Tax Com.*, 227 Or 486, 360 P2d 778, 363 P2d 775 (1961), the court found that it had no jurisdiction to entertain the appeal, because service of the summons and complaint was made by personal service rather than by registered mail as provided in the statute.

Appeal dismissed; cross-appeal dismissed.

**VAN HOOMISSEN, J.,** dissenting.

I respectfully dissent, because I find that this harsh result is not mandated by ORS 19.023(2)(c) or ORS 19.033 and because there is no compelling reason for this court to take such a hard line in this case. The result is simply unjust.

Defendants' attorneys maintain their offices in Portland. The case was tried in Pendleton. Defendants' notice of appeal was timely filed. Copies were served on the trial court clerk, on plaintiff's attorney and on two court reporters. Later, one of defendants' attorneys assigned to the appeal learned that a *third* reporter had participated in the trial. That reporter was promptly served. However, that service was ten days after the appeal time had expired. Plaintiff makes no claim of prejudice. The majority concludes that failure timely to serve the third reporter deprives this court of jurisdiction. I disagree.

Three reporters were involved in the trial, Bunker, Frank and Park, the "official" trial court reporter. Defendants' attorneys served Bunker and Frank. They did not serve Park. The affidavit of one of defendants' attorneys states that, in the course of preparing this appeal, she called the trial court administrator's office in Pendleton to ascertain the names of the court reporters who had participated in the lengthy trial and that she was informed that the reporters were Bunker and Frank.[1] Her affidavit further states that she learned later from Bunker that Park had reported the last part of the trial. Park was served promptly. When the attorney called the trial court administrator's office to discuss the misinformation she had been given

"[t]he employee told me that the probable reason why I was not told that Joni Park was one of the reporters was because Ms. Park had been out with an injured hand for most of this trial. Ms. Bunker had been called in to replace Ms.

---

[1]This does not explain why the attorney did not verify the information received with defendants' trial attorney, a member of the same law firm. An attorney may not rely on the representations of a trial court clerk. *See Far West Landscaping v. Modern Merchandising,* 287 Or 653, 659-60, 601 P2d 1237 (1979); *Haas v. Scott et al.,* 115 Or 580, 588-89, 239 P 202 (1925).

Park, and when Ms. Bunker became ill, Mr. Frank had been called in."[2]

I see no compelling reason to interpret the requirements of ORS 19.023(2)(c) so strictly. That statute only requires that the trial court "reporter" be served. Nothing in the statute's legislative history indicates any legislative intent to deny a party appellate review on the facts found here.[3] On the contrary, an abundance of legislative history supports a conclusion that appellate procedure should be simple and flexible. *See Pohrman v. Klamath Co. Comm.,* 272 Or 390, 392, 538 P2d 70 (1975) (inflexibility in appellate procedure basis for reform); *Gordon Creek Tree Farms v. Layne et al,* 230 Or 204, 210, 358 P2d 1062, 368 P2d 737 (1962) (procedural sins of attorneys should not necessarily be visited on their clients).

Litigation is more complex today. It is not unusual for there to be several reporters involved in a lengthy case. The thought that a parties' right to appellate review could be lost simply because an attorney inadvertently failed to serve one of several reporters *when no prejudice is claimed* shocks my conscience. As a former trial judge, I recall the confusion caused by the multitude of "pro-tem" reporters that worked in my courtroom. Many of them worked only part time for judges. The rest of the time they freelanced. A young and highly mobile group, they moved frequently about the state, and it was not uncommon for one of them to leave the state

---

[2]Park's affidavit dated October 24, 1983, states that she filed a memorandum with the trial court clerk on June 8, 1983, noting that she had reported the case on June 6 and 7, 1983, and that her memorandum was placed in the trial court file by the trial court clerk on June 8, 1983, "where it has remained until this time."

[3]Tape 90-A March 31, 1981 - Senate Justice Committee Senate Bill 448 - Relating to Appellate Courts (Civil Appeals):

"ELIZABETH D. BELSHAW, State Court Administrator for the State of Oregon, started by answering Senator Kulongoski's question to whether the bar association had any problems with * * * SB 448 * * *. She said they do not that the purpose of 448 is very simple, it's just to standardize the method for filing both the civil and criminal case. * * *

"* * * * *

"KULONGSKI said then on line 16, you are only going to notify the trial court reporter when a transcript or part of a transcript is being designated and Carol Justis said the reason for that is an attorney will serve a report when there is no transcript designated so she especially wanted that word designated in there. She said there is no transcript designated that changes the briefing time - we don't have to allow for a transcript."

entirely. Keeping track of their whereabouts was a major chore.

The result here is *arguably* correct, because defendants' attorneys failed to serve Park, the "official" trial court reporter. That is not the basis on which the majority reaches its conclusion, however.

I am disturbed by the path this court is following. *See, e.g., Bauman v. Gittlesohn,* 64 Or App 849, 669 P2d 1188 (1983). I agree with Judge Warren's dissent in *Bauman,* 64 Or App at 850. I have no quarrel with *McQuary v. Bel Air Convalescent Home, Inc.,* 64 Or App 528, 669 P2d 348, *rev allowed* 296 Or 56 (1983). There, the appellant failed to serve *either* of the two court reporters in the case *and* the trial court clerk. That case is obviously distinguishable. In *Burnam v. Garon Development Corporation,* 64 Or App 847, 669 P2d 1186 (1983), the appeal was dismissed because it was not from a final judgment. *See* ORS 19.010(2)(e). Apparently, it also would have been dismissed for failure to serve the trial court clerk. (The county clerk who was served was not the *trial court* clerk).[4]

There is simply no compelling reason for us to take a hard line here. The language of the statute is *not* clear or unambiguous. Therefore, we should construe the statute in a common-sense, real-world manner. Unless *clearly* required to do so, we should not visit "the procedural sins of attorneys" on their clients. *See State ex rel Nilsen v. Ore. Motor Ass'n,* 248 Or 133, 137, 432 P2d 512 (1967) (statute to be construed to promote legislative policy and objectives ); *Satterfield v. Satterfield,* 292 Or 780, 643 P2d 336 (1982) (avoid literal application of statute that produces unreasonable result contrary to legislative policy). What is called for here is statutory construction that promotes justice, not a mechanistic approach that promotes nothing more than an increase in premiums paid to the Professional Liability Fund, which increase is obviously passed on in due course to litigants and the public. The majority's approach may be neat and tidy, but it is not justice!

---

[4]Indeed, how does a lawyer *guarantee* that a person served in good faith is, in fact, the clerk of the trial court. If the majority is correct, good faith is irrelevant.