HART et al,
*Petitioners,*

*v.*

PAULUS,
*Respondent.*

(SC S30242)

676 P2d 1384

Howard A. Rankin, Portland, argued and submitted the petition on behalf of petitioners. With him on the petition and reply brief was Rankin, McMurry, VavRosky & Doherty, Portland.

Michael D. Reynolds, Assistant Attorney General, Salem, argued and submitted the respondent's brief for respondent. With him on the brief were John R. Reuling, Special Counsel, James E. Mountain, Jr., Solicitor General and Dave Frohnmayer, Attorney General, Salem.

LINDE, J.

Lent, J. filed a concurring opinion.

**LINDE, J.**

In a statutory proceeding specially prescribed by the legislature, petitioners challenge the validity of the process by which certain constitutional amendments were referred to the voters.

Much of the time and attention of the Legislative Assembly during 1983 was devoted to searching for means to limit or reduce local property taxes. The legislature did not enact such a program during its regular session. There was substantial disagreement over funding property tax reduction by means of a retail sales tax. The search was renewed in a special session called for that purpose, but referral of a sales tax measure to the voters remained controversial.

The special session culminated in the following compromise. Senate Joint Resolution 30 (1983 first special session) provided that three constitutional amendments would be referred to the voters. One amendment, designated to become article IX-A, would impose a limitation on appropriations for state and local expenditures to be calculated by a formula based upon populations and per capita income but subject to increase or decrease by vote of the respective electors. The second amendment, designated to become article IX-B, would govern the disposition of a general retail sales tax to be enacted by statute. Article IX-B would limit the maximum rate of such a sales tax to four percent, excluding certain classes of subjects entirely, and would dedicate the net amounts raised exclusively to property tax reduction.[1] The third amendment would add a section to article IX exempting social security and Railroad Retirement Act benefits from Oregon income taxes. The first two of these amendments, IX-A and IX-B, would take effect only if the companion amendment also was approved by the voters. Companion bills enacted a sales tax and other provisions which become operative only if both constitutional amendments are approved.

The compromise, however, contained another element. Paragraph 3 of SJR 30, the joint resolution referring the amendments to the electorate, provides that the joint resolution "shall not be effective unless local government units

---

[1] The title for this ballot measure was before this court in *Priestly/Fadeley v. Paulus,* 296 Or 268, 675 P2d 1048 (1983), but those proceedings did not involve the issue whether the measure was properly referred to a vote of the electorate.

representing at least a majority of the population of the state and a majority of such units ratify this amendment and request its placement on the ballot as provided for in this paragraph." The paragraph continues:

"(1)  Senate Joint Resolution 30 (1983 first special session) is rescinded on March 10, 1984, unless:

"(a)  The governing bodies of a majority of all of the cities, all of the counties and all of the school districts, including community college districts, together representing a majority of the population in the state, as determined by the Secretary of State, request by application to the Secretary of State that the constitutional amendment in paragraph 2 of Senate Joint Resolution 30 (1983 first special session) be placed on the ballot at an election provided in this paragraph; and

"(b)  Senate Bill 792 and House Bill 3026 both become law.

"(2)  A city, county or school district may make its application under this section only after the governing body of the city, county or school district has held a public hearing on the application.

"(3)  Once submitted, an application cannot be withdrawn by a city, county or school district. An application need be submitted only once. A submitted application shall be considered an application for both of the election dates under subsection (4) of this paragraph."

Subsection (4) designates different election dates depending on the time when "the requisite number of applications are submitted to the Secretary of State."

If a majority of local governmental units, also representing a majority of the population, eventually voted to "ratify" the sales tax measure and "request" or "make application" for its submission to the electors the measure would be submitted, otherwise not. The election procedures were further spelled out in a companion bill, House Bill 3027. Section 3 of this bill ties the filing of arguments for or against the measures for use in the Voters' Pamphlet to "the conditions under Paragraph 3" of SJR 30, that is, to the requisite requests and applications by the local entities.

Adoption of the whole procedure was accompanied by misgivings about its constitutionality. Accordingly, Section 8 of HB 3027 was enacted. Or Laws 1983 (first special session) ch 4. It provides:

"SECTION 8. Any interested party, by petition to the Supreme Court, may commence proceedings for a judicial examination and judgment of the Supreme Court as to the constitutionality and legality of paragraph 3, Senate Joint Resolution 30 of the Sixty-second Legislative Assembly (special session). Jurisdiction shall be acquired pursuant to ORS 28.020. The Supreme Court shall have original and exclusive jurisdiction of proceedings initiated under this section. Proceedings under this section shall be given priority over all other matters before the Supreme Court."

The present proceeding was initiated under this section.

## JUSTICIABILITY

■    Respondent denies that the proceeding presents anything for this court to decide. We therefore begin with that issue. As this proceeding is specially authorized by Section 8, *supra,* the question is whether the statute calls upon this court to issue a declaration beyond the "judicial power" allowed the courts by Article VII, section 1 (amended) of the Oregon Constitution.

Petitioners' petition alleges their respective interests as property owners and taxpayers. It contends that Paragraph 3 of SJR 30 is unconstitutional for three reasons: (1) because it contravenes the method specified in Article XVII, section 1, of the Oregon Constitution for legislative submission of constitutional amendments to the people; (2) because it makes the "taking effect" of the election procedures depend upon an authority (the authority of the local governments) contrary to Article I, section 21, of the constitution;[2] and (3) because the requirement of a request and application by the local government units violates the equality of privileges and immunities guaranteed by Article I, section 20 of the constitution in that the scheme does not afford citizens equal influence in the actions of different and overlapping local units. The petition also attacks the validity of Section 3 of HB 3027, which deals with the preparation of arguments for the Voters' Pamphlet. The petition prays for a declaratory judgment invalidating these provisions, for an order directing the Secretary of State

---

[2] Or Const Art I, § 21:

"No *ex-post facto* law, or law impairing the obligation of contracts shall ever be passed, nor shall any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution; . . . ."

to place the proposals on the ballot, and for "such other relief as the Court may deem just and proper."

Respondent denies that there is a justiciable controversy between the parties and asks us to dismiss the petition. In other cases we have held that the legislature cannot expand the "judicial power" under Article VII, section 1, to engage the courts in a "judicial examination" of the validity of laws in a vacuum. *See Oregon Medical Association v. Rawls,* 281 Or 293, 574 P2d 1103 (1978), *Oregon Medical Association v. Rawls,* 276 Or 1101, 557 P2d 664 (1976). In this state the legislature cannot direct the courts to render a purely advisory opinion. It can, however, provide for a declaratory judgment unaccompanied by any other relief.

■ This is what the legislature did in Section 8, quoted above. Respondent contends that there is no justiciable controversy between these petitioners and herself as Secretary of State because the petitioners have asked the court for an order to place the proposed constitutional amendments on the ballot, and she presently intends to do so in any event. The Secretary of State argues that although there may be genuine disagreement over the validity of the challenged provisions, it is a disagreement without any practical consequences as between these parties. Further, the Secretary of State states that the requisite majority of local government units has made the application required by Paragraph 3 of SJR 30 and that therefore the issue is moot.

This special proceeding is no ordinary private dispute between these petitioners and respondent; it was created by the legislature to permit a speedy resolution of a public issue on which further action by those responsible for the state's fiscal policies might depend. Our only jurisdiction under Section 8 is to render a judgment "as to the constitutionality and legality of Paragraph 3, Senate Joint Resolution 30." Because of this limited grant of jurisdiction, no other relief or order is in issue.

The parties' opposing positions on the constitutionality of Paragraph 3 of SJR 30 (first special session) have been briefed and vigorously argued. This is very different from the two proceedings between the Oregon Medical Association and Rawls, cited above, in which the medical association wanted a declaration that a statute was constitutional against

any hypothetical attack and respondent, the state insurance commissioner, agreed with that view.

It should be clear to Oregon voters and the legislature that a declaration that the proposed amendments were submitted by an improper procedure has substantial practical significance. First, we do not take for granted that respondent's view of her duty to place the amendments on the ballot will remain the same in the light of this opinion. We are given no jurisdiction to advise her in this proceeding. We refer to a possible reconsideration by the Secretary of State only to meet the argument that the proceeding is without practical substance.

Second, we do not lose sight of the fact that it was the Legislative Assembly that made this provision for a speedy adjudication of the validity of the disputed procedure. Possibly members of the legislature wished to be in a position to suggest further legislative action in case the validity of the amendments proved seriously doubtful. We cannot assume that the validity of the disputed procedure would be of no practical importance, when the legislature took extraordinary steps to have it decided by this court in priority to all other matters.

If the present dispute were not justiciable, the validity of the procedure by which this amendment was submitted could not be tested by means of this proceeding under Section 8. Decision whether the constitutional amendments and the sales tax statute became law or not would have to await a later challenge to their validity if they should gain approval by the voters. This delay, with its risk of legal complications and fiscal turmoil at a later time, is what Section 8 was designed to avoid. The petitioners' interests as pleaded in the petition, the genuine disagreement between these parties over properly identified and briefed legal issues, and the possibility that our judgment may affect respondent's further action together bring this proceeding under Section 8 within the bounds of justiciability.

## VALIDITY OF PARAGRAPH 3

We therefore turn to the respondent's arguments on the merits.

The Secretary of State's response and supporting brief do not directly defend the constitutional validity of a procedure that makes the assent of local officials a necessary step between the legislative approval of a constitutional amendment and its referral to a vote of the people, beyond a plea to allow the legislature some "flexibility." A defense is hard to state in view of the clear mandate of the constitutional amendment procedures. Oregon Constitution, Article XVII, section 1, provides:

"Any amendment or amendments to this Constitution may be proposed in either branch of the legislative assembly, and if the same shall be agreed to by a majority of all the members elected to each of the two houses, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered in their journals and referred by the secretary of state to the people for their approval or rejection, at the next regular general election, except when the legislative assembly shall order a special election for that purpose. If a majority of the electors voting on any such amendment shall vote in favor thereof, it shall thereby become a part of this Constitution . . . ."

The section plainly requires that the Legislative Assembly itself must reach agreement on the desirability of submitting the proposed amendment to the people and that thereafter the amendment "shall" be referred to the people "for their approval or rejection." No statute or joint resolution can add a requirement that a proposed amendment also be requested or ratified by someone else.

Instead, respondent points to the phrasing of the proposed article IX-B, Section 3, which provides that if the requisite applications are not filed, the proposed articles IX-A and IX-B "are repealed on June 30, 1984." She contends that under this section, local government assent is not a precondition for the enactment of the ballot measures, but the absence of local government assent is a fact which causes the amendments to self-destruct after enactment. This argument, however, does not deal with the explicit statement in Paragraph 3 of SJR 30 (first special session), the joint resolution containing both measures, that the joint resolution "shall not be effective unless local government units representing at least a majority of the population of the state and a majority of such units ratify this amendment and request its placement on the ballot as provided for in this paragraph." To meet this

problem, respondent suggests that the legislature merely chose to avoid a needless election on measures which, by their own terms, would be doomed to repeal before they were even enacted.

The argument does not disguise the legislative compromise that the sales tax package would be submitted only if the requisite number of local governments first took steps to "ratify" the sales tax amendment and "request" its referral to the voters.

With respect to Article XVII, section 1, respondent notes that the amendments were "proposed" in one of the branches of the Legislative Assembly, that the legislature "agreed" to them, and that they were referred to the people for their approval or rejection, all of which are steps required by that section. But the apparent compliance with the words of the constitution fails at its second step. The legislative record leading to the measures before us is clear that the Legislative Assembly did not arrive at agreement on submitting these proposals to the people. To the contrary, the legislature had reached a stalemate which was broken only by the device of shifting a part of the political responsibility for the proposals to the shoulders of local officials.

There is no question that the insertion of this local ratification of the package was an integral element of the compromise. Without setting out the legislative history in this expedited opinion, the premise of the provision also appears on the face of Paragraph 3 of the joint resolution. The paragraph begins with the disclaimer that "[t]he Legislative Assembly does not desire to propose a sales tax for the use of the government of the State of Oregon," that the state government does not need "these tax dollars" and does not want them, and that "[l]ocal government units will be the users of these funds if approved by the electors." The essential relation between this disclaimer and the immediately following requirement that the local officials "ratify" the sales tax amendment and "request" its placement on the ballot is clear.

This injection of third parties into the amendment process is no mere technicality. Its importance extends beyond this case and the immediate issue of a controversial tax. The constitution is the basic charter of state government, a charter that should not be lightly filled with details of laws

that may require frequent reexamination and adjustment. It therefore is essential that the Legislative Assembly itself reach agreement on the important question whether to submit to the people a proposal to amend their constitution. A decision to submit an amendment only upon the intervening "request" or "application" of third parties, as in this instance, contravenes the clear responsibility of the Legislative Assembly to decide for itself whether referral of the proposed amendment will or will not best serve the constitution of the state.

The effect of Article XVII, section 1, is reinforced by the provision of Article I, section 21, also cited in petitioners' attack on the present procedure. The relevant words forbid that "any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution." The section refers us back to what is provided in the constitution, which is the direct referral of constitutional amendments by the legislature to the people without interposition of any extrinsic authority.

A question was raised at oral argument whether the disputed Paragraph 3 was "severable" from the remainder of SJR 30. In reply it was pointed out that "severability" had not been raised by the pleadings and was not an issue in this proceeding, although if it were, both parties would favor holding the paragraph severable. The conference committee preparing the final package actually considered proposals for specifying that the local ratification requirement could be severed or that it could not be, but both proposals were defeated. In any event, "severance" is not the applicable concept in this case. This is not a law composed of independent provisions, one invalid and most valid, where the issue is whether the legislature intended the valid parts to become law without the invalid part or whether they are inextricably interrelated. The validity of the proposed amendments, if properly adopted, is not in issue.

What is in issue, what Section 8 directs this court to examine and adjudge, is the legality of the enactment process itself. The Legislative Assembly never agreed to submit these proposals to the voters without the ratification and request of the local governments. To the contrary, the legislators expressly made their agreement contingent on that local

action. The legislature did not say it would like local ratification and applications if possible. It did not say that both houses would agree to submit for this package of amendments with or without that local assent. We have no basis for assuming that they would do so, or that they would not, once this court provides the declaration specially provided for and in dispute between these parties.

The petitioners asked not only for a judgment declaring Paragraph 3 of SJR 30 to be unconstitutional but also for an order directing the respondent Secretary of State to place the proposed amendments on the ballot and for such other relief as the court may deem just and proper.[3] The prayer for such an order or other relief is beyond the jurisdiction placed in this court by the special statute.[4] Those requests are extraneous to the present proceeding. As already stated, we cannot here declare the proposed amendments, if adopted, either constitutional or unconstitutional, and we can issue no order or advice to respondent under the terms of this special proceeding.

We therefore grant only petitioner's request for a declaration that the procedures required by Paragraph 3 of Senate Joint Resolution 30 do not constitute compliance with Oregon Constitution Article XVII, section 1. We deny petitioners' requested order that the respondent place the proposed constitutional amendment on an election ballot.

**LENT, J.,** concurring.

I concur in the court's opinion, which also speaks for me, but I believe that I must express my confusion as to whether this exercise was at all necessary. Perhaps there is an

---

[3] The prayers in the petition state:

"1. Declaring and adjudicating Paragraph 3 of Senate Joint Resolution 30, and Section 3 of House Bill 3027, to be illegal and unconstitutional, thereby rendering Section 3 of Paragraph 2 of Senate Joint Resolution 30 a nullity; and

"2. Directing Respondent Secretary of State to place the proposed Articles IX-A and IX-B on the ballot for a vote of the people on March 27, 1984 or May 15, 1984 or at the next regular general election pursuant to Article XVII, Section 1 of the Oregon Constitution; and

"3. For such other relief as the Court may deem just and proper. . . ."

[4] Our limitation of this holding also is consistent with the limitation of issues in a declaratory judgment proceeding. *See Heintz v. Sinner,* 232 Or 529, 533, 376 P2d 478 (1962).

easy answer to resolve my confusion concerning the matters discussed in this separate opinion, but in the limited time this matter has been before us I have not found it.

As observed by the majority, 296 Or at 354, a companion bill "enacted" a sales tax. Enrolled House Bill 3026, 1983 Special Session, consisting of 64 printed pages, was passed by both houses of the legislature, signed by the Speaker of the House and the President of the Senate on October 10, 1983, and signed by the Governor on October 12, 1983. The Final Legislative Calendar for that special session, according to its cover, "Published Under Direction of President of the Senate and Speaker of the House," states that the Enrolled House Bill 3026 is to be denominated "Chapter 3, First Special Session 1983 Oregon Laws" and that its "Effective date" is October 11, 1983.

Article IV, section 28, of the Oregon Constitution provides that no act shall take effect until 90 days after the end of the session at which it is passed unless an emergency is declared in the preamble or in the body of the law. If there is such a declaration in House Bill 3026, I have quite simply missed it. Moreover, Article IX, section 1a, proscribes the declaration of an emergency "in any act regulating taxation or exemption." I perceive House Bill 3026 to be such an act. Furthermore, Article V, section 15b, of the Oregon Constitution states that a bill which has passed the legislative assembly "shall, before it becomes law, be presented to the governor; if he approve, he shall sign it." According to the final calendar, this bill became effective the day before the governor signed it. Apparently it is now to be considered a part of our statutory law, however, for it has been denominated chapter 3, First Special Session 1983 Oregon Laws.

The foregoing would make it appear that House Bill 3026 has become law in the contemplation of the legislature. The language of Senate Joint Resolution (SJR) 30, signed by the President and the Speaker on October 11, 1983, and filed with the Secretary of State on the same day, raises a question, however, as to that apparent fact. Paragraph 2 of SJR 30 proposes the addition of a new article to the Oregon Constitution to be known as Article IX-B. Just what is to be the text of Article IX-B is not at all clear, for Paragraph 2 states that the new article is to "read:" and then states three sections of text with no quotation marks. It does not seem reasonable that the

matter contained in Sections 2 and 3 is to be a part of the new article. In any event, Section 1(8) provides that "sections 1 to 166 of House Bill 3026, as passed by the first special session of the Sixty-Second Legislative Assembly, shall become law on the effective date of this amendment." The effective date of the amendment cannot be ahead of an election by the people to adopt the amendment.

Paragraph 3 of SJR 30 provides in part:

"(1)   Senate Joint Resolution 30 (1983 first special session) is rescinded on March 10, 1984, unless:

"* * * * *

"(b)   Senate Bill 792 and House Bill 3026 both become law."

March 10, 1984, is a date well ahead of any date on which an election may be held for the adoption of the proposed constitutional amendment.

It appears that the entire SJR 30 will be "rescinded" not "as of" but "on" March 10, 1984, because a major part of House Bill 3026 cannot have "become law" by that date.

If SJR 30 is rescinded on March 10, 1984, I do not venture what may be the fate of Paragraphs 4 and 5 of SJR 30, although it would seem to me that the legislature meant for the people to vote on the constitutional amendment proposed in Paragraph 4 on the date proposed in Paragraph 5, no matter what the fate of the sales tax and spending limit amendments.

As I have stated above, the solution to the problems I see may be easy, but I do not readily grasp that solution at this moment. If SJR 30 is "rescinded" on March 10, 1984, however, it appears quite useless to hold an election on the resolution's proposed amendments at some later date.

These matters are not before us under the terms of House Bill 3027 (Or Laws, First Special Session, ch 4), section 8, and under the pleadings in this case. There is no occasion for this court to seek the solution in this case.