Argued and submitted August 13, 2008, appeal dismissed as moot
February 18, 2009

O. Keith CYRUS
and Conida E. Cyrus,
husband and wife,
*Petitioners-Appellants,*

*v.*

BOARD OF COUNTY COMMISSIONERS
OF DESCHUTES COUNTY,
*Respondent-Respondent,*

*and*

CENTRAL ELECTRIC COOPERATIVE, INC.,
an active Oregon cooperative,
*Intervenor-Respondent.*

THE TRAIL CROSSING TRUST,
*Petitioner-Appellant,*

*v.*

BOARD OF COUNTY COMMISSIONERS
OF DESCHUTES COUNTY,
*Respondent-Respondent,*

*and*

CENTRAL ELECTRIC COOPERATIVE, INC.,
an active Oregon cooperative,
*Intervenor-Respondent.*

Deschutes County Circuit Court
05CV0511MA, 05CV0560ST; A133381

202 P3d 274

Michael T. Garone argued the cause for appellants. With him on the joint opening brief were Donald Joe Willis, Sara Kobak and Schwabe, Williamson & Wyatt, and Michael W. Peterkin, Brian C. Hickman, and Peterkin & Associates. With him on the joint reply brief were Donald Joe Willis and Schwabe, Williamson & Wyatt, and Michael W. Peterkin, Brian C. Hickman, and Peterkin & Associates.

Martin E. Hansen argued the cause for intervenor-respondent. On the brief were Gerald A. Martin, Michael H. McGean, and Francis Hansen & Martin LLP.

No appearance for respondent.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.

BREWER, C. J.

Sercombe, J., concurring.

## BREWER, C. J.

This case arises out of consolidated writ of review proceedings involving O. Keith Cyrus and Conida E. Cyrus and The Trail Crossing Trust (petitioners), and Central Electric Cooperative (CEC). Petitioners initiated the writ of review proceedings to challenge an order issued by the Deschutes County Board of Commissioners that approved a claim filed by CEC under Ballot Measure 37, codified as ORS 197.352 (2005). CEC sought just compensation under Measure 37 or a waiver of certain land use regulations that Deschutes County applied to CEC's utility easements. The board of commissioners waived the land use regulations, and the circuit court affirmed the majority of the board's order.[1]

Petitioners then appealed the circuit court judgment, contending that CEC was not entitled to relief under Measure 37 for a number of reasons, including that CEC did not acquire the easements at issue until 2001 and that the electric cooperative was a public entity not entitled to relief under Measure 37. While petitioners' appeal was pending in this court, the voters passed Ballot Measure 49, which amended Measure 37 and added provisions that altered the claims and remedies available to landowners whose property values were adversely affected by land use regulations. Or Laws 2007, ch 424, § 4, *renumbered as* ORS 195.305.

In the aftermath of Measure 49, CEC filed a motion to dismiss petitioners' appeal on the ground that Measure 49, as construed in *Corey v. DLCD*, 344 Or 457, 184 P3d 1109 (2008), rendered the appeal moot. Petitioners opposed that motion, arguing that there was a dispute between the parties as to whether CEC had acquired "vested rights" under subsection 5(3) of Measure 49, which provides that a claimant who filed a claim under Measure 37 is entitled to just compensation as provided in

> "[a] waiver issued before the effective date of this 2007 Act to the extent that the claimant's use of the property complies with the waiver and the claimant has a common law

---

[1] The circuit court remanded a portion of the order for a correction of the legal description of the property at issue.

vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver."

According to petitioners, it is undisputed that CEC has already constructed a power line on the easements at issue; for that reason, a determination of the validity of the Measure 37 waiver will have a practical effect on their rights, because CEC can only have a common-law vested right if its development was done with a valid waiver. For the reasons that follow, we agree with CEC's contention that the case is moot.

This court has an independent obligation to determine whether a case is "justiciable," *Oregon Medical Association v. Rawls*, 281 Or 293, 296, 574 P2d 1103 (1978), and mootness is part of that inquiry. *First Commerce of America v. Nimbus Center Assoc.*, 329 Or 199, 206, 986 P2d 556 (1999) (explaining that mootness is a "species of justiciability"). "If it becomes clear in the course of a judicial proceeding that resolving the merits of a claim will have no practical effect on the rights of the parties, this court will dismiss the claim as moot." *Corey*, 344 Or at 465 (citing *Yancy v. Shatzer*, 337 Or 345, 349, 97 P3d 1161 (2004)). For example, a case no longer has a practical effect on or concerning the rights of the parties when "an event occurs that 'render[s] it impossible for the court to grant effectual relief.'" *Hamel v. Johnson*, 330 Or 180, 184, 99 P2d 661 (2000) (quoting *Greyhound Park v. Ore. Racing Com.*, 215 Or 76, 79, 332 P2d 634 (1958)); *see also Kerr v. Bradbury*, 340 Or 241, 244, 131 P3d 737 (2006) (the judicial power under Article VII (Amended), section 1, does not extend to advisory opinions).

Here, the parties agree—as do we—that the beginning point for analyzing the question of mootness with respect to a Measure 37 claim is the Supreme Court's decision in *Corey*. The issue on review in *Corey* was whether the Court of Appeals or the circuit court had jurisdiction to review a final order of the Department of Land Conservation and Development (DLCD) respecting the plaintiffs' Measure 37 claim. As a threshold matter, however, the Supreme Court considered "whether resolution of the jurisdictional question that DLCD brought to us can have any practical effect on the rights of the parties." 344 Or at 464.

To answer the predicate question of justiciability, the court first examined the scope and effect of Measure 49:

> "*An examination of the text and context of Measure 49 conveys a clear intent to extinguish and replace the benefits and procedures that Measure 37 granted to landowners.* As noted, section 5 of Measure 49, set out above, provides that claimants who filed 'claim[s]' under ORS 197.352 before Measure 49 became effective (*i.e.*, Measure 37 claimants), are entitled to 'just compensation' as provided in designated provisions of Measure 49. Subsection 2(2) of Measure 49 defines 'claim' to include any 'written demand for compensation filed under * * * ORS 197.352,' including those filed under the version of the statute that was 'in effect immediately before the effective date of [Measure 49].' That definition establishes that Measure 49 pertains to all Measure 37 claims, successful or not, and regardless of where they are in the Measure 37 process. Subsection 2(13) then defines 'just compensation' purely in terms of Measure 49 remedies, *i.e.*, '[r]elief under sections 5 to 11 of this 2007 Act for land use regulations enacted on or before January 1, 2007,' and '[r]elief under sections 12 to 14 of this 2007 Act for land use regulations enacted after January 1, 2007.' At the same time, section 4 of Measure 49 extensively amends ORS 197.352 (2005) (Measure 37) in a way that wholly supersedes the provisions of Measure 37 pertaining to monetary compensation for and waivers from the burdens of certain land use regulations under that earlier measure.
>
> "*A statement of legislative policy at section 3 of Measure 49 confirms that the legislature intended to create new forms of relief in place of the ones available under Measure 37*: 'The purpose of sections 4 to 22 of this 2007 Act and the amendments to Ballot Measure 37 (2004) is to modify Ballot Measure 37 (2004) to ensure that Oregon law provides just compensation for unfair burdens while retaining Oregon's protections for farm and forest uses and the state's water resources.' "

*Id.* at 465 (emphasis added; original emphasis omitted).

Despite the legislature's intent to displace Measure 37 remedies, the plaintiffs in *Corey* contended that, under subsection 5(3) of Measure 49, they were entitled to "just compensation." In their view, "once DLCD concluded that post-acquisition land use regulations had reduced the fair market

value of their property and granted relief in the form of a waiver, they had a constitutionally protected 'property right' in that waiver * * *—*i.e.*, a vested right." *Id.* at 466. The plaintiffs further argued that "the waiver that DLCD granted under Measure 37 is the equivalent of rights obtained under a judgment granting a monetary award, and is vested in the sense that it cannot be diminished by legislative action." *Id.*

The Supreme Court expressed doubt as to the *Corey* plaintiffs' "vested rights" argument on a number of scores:

"[P]laintiffs fail to confront the *entire* wording of subsection 5(3). The 'vested right' that that subsection requires is a 'common law vested right * * * to complete and continue the use described in the waiver.' It is clear from text and context alone that that phrase is referring to broadly applicable legal precedents describing a property owner's rights when land use laws are enacted that make a partially finished project unlawful. *See, e.g., Clackamas Co. v. Holmes*, 265 Or 193, 197, 508 P2d 190 (1973) (describing 'vested rights' in those terms). But plaintiffs have made no claims that they have partially completed any 'use described in the waiver' that they received.

"To the extent that plaintiffs wish to assert that the scope of subsection 5(3) is any broader, then Measure 49 provides plaintiffs with an opportunity to assert that claim, and a forum in which they may assert it. The same is true of any other objections that plaintiffs have to the effects of Measure 49. In short, this is a *Measure 37* case, and we confine our substantive discussion to that legislation."

*Id.* (emphasis in original).

The court then clarified the scope of its holding:

"In the end, we hold only that plaintiffs' contention that Measure 49 does not affect the rights of persons who already have obtained Measure 37 waivers is incorrect. In fact, Measure 49 by its terms deprives Measure 37 waivers—*all* orders disposing of Measure 37 claims—of any continuing viability, with a single exception that does not apply to plaintiffs' claim. Thus, after December 6, 2007 (the effective date of Measure 49), the final order at issue in the present case had no legal effect. It follows that resolution of the issue that the Court of Appeals decided in *Corey* and as to which we allowed review—whether the Court of Appeals

or the circuit court has jurisdiction to review DLCD's final order respecting plaintiffs' Measure 37 claim—can have no practical effect upon the parties: If the order at issue has no continuing legal effect, then neither party can gain anything from review *in either forum*. The case is moot."

*Id.* at 466-67 (emphasis in original).

According to petitioners, this case is distinguishable from *Corey*—and, therefore, justiciable—because CEC has partially completed construction of a transmission line, the use described in its Measure 37 waiver. In petitioners' view, a determination by this court regarding the validity of the underlying Measure 37 waiver will have a practical effect on the rights of the parties, because a valid Measure 37 waiver is a prerequisite to any "vested right" under subsection 5(3) of Measure 49.

We acknowledge that this case presents a different issue from *Corey*, for the reason that petitioners cite. In *Corey*, the plaintiffs "made no claims that they ha[d] partially completed any 'use described in the waiver' that they received." *Id.* at 466. Here, by contrast, there appears to be no dispute that CEC has at least partially completed a use described in the waiver. That distinction notwithstanding, in our view, dismissal of this case as moot is compelled by the Supreme Court's construction of Measure 49 in *Corey*.

*Corey*, as set out above, held that Measure 49 was intended "to extinguish and replace the benefits and procedures that Measure 37 granted to landowners." 344 Or at 465. In short, a decision under Measure 37—valid or not—no longer governed the rights and obligations of the parties in *Corey* because the plaintiffs' entitlement to "just compensation," if any, was governed by Measure 49. 344 Or at 467 ("Thus, after December 6, 2007 (the effective date of Measure 49), the final order at issue in [*Corey*] had no legal effect. * * * If the order at issue has no continuing legal effect, then neither party can gain anything from review *in either forum*. The case is moot." (Emphasis in original.)).

Thus, *Corey* turned on the proposition that "Measure 49 by its terms deprives Measure 37 waivers—and *all* orders disposing of Measure 37 claims—of any continuing viability,

with a single exception that does not apply to plaintiffs' claims." 344 Or at 466-67 (emphasis in original). The "single exception" identified in *Corey*, of course, is subsection 5(3) of Measure 49; that is, the *only* circumstance in which a Measure 37 waiver has "continuing viability," is when a claimant has vested rights under subsection 5(3) of Measure 49.

Even so, *Corey* indicates that any entitlement to "just compensation" under Measure 49—including under subsection 5(3), the "vested rights" provision—must be decided under Measure 49 rather than on appeal of a Measure 37 claim. Although the *Corey* court initially rejected the plaintiffs' contention that they had acquired a "vested right" under subsection 5(3),[2] the court expressly declined to address any additional arguments that the plaintiffs were entitled to "just compensation" under Measure 49 by way of a broader reading of subsection 5(3). Instead, the court reasoned that Measure 49 "provides plaintiffs with an opportunity to assert that claim [regarding the scope of subsection 5(3)], and a forum in which they may assert it." 344 Or at 466. For that reason, the court expressly confined its "substantive discussion" to Measure 37.[3]

The fact that the Supreme Court expressly declined to resolve plaintiffs' entitlement to just compensation under subsection 5(3)—the "vested rights" provision—is significant. In effect, the *Corey* court recognized that, regardless of whether it agreed with the plaintiffs' broad "vested rights" theories under subsection 5(3), the Measure 37 waiver at issue had "no continuing legal effect," in part because any relief under that subsection of Measure 49 would need to be litigated under that statute *in another forum*. 344 Or at 466. In fact, the court specifically recognized that the plaintiffs

---

[2] In doing so, the court concluded from the "text and context alone" that "vested rights" under Measure 49 refers to *Holmes* and other "broadly applicable legal precedents * * *." 344 Or at 466.

[3] Later in the opinion, the court returned to the notion that the *Corey* plaintiffs' rights under Measure 49 could be asserted in a different forum. The plaintiffs in *Corey* contended that the case was justiciable under ORS 14.175 because it was "likely to evade judicial review in the future." The court rejected that argument on the ground that "ORS 14.175 does not present a basis for review in this case, because, as we already have observed, plaintiffs *can pursue their claim pursuant to the procedure set out in Measure 49, including any assertion that Measure 49 acts on them in an unconstitutional way*." 344 Or at 467 (emphasis added).

had another "opportunity" and "forum" to assert claims to "just compensation" under subsection 5(3) of Measure 49, despite the court's earlier, general discussion of the meaning of that subsection. *Id.*

Although it is not entirely clear from *Corey*—or, frankly, from the text of Measure 49 itself—in what "forum" the voters intended the subsection 5(3) "vested rights" determination to take place,[4] CEC and petitioners would appear to have, at the very least, the ability to seek declaratory or injunctive relief concerning CEC's rights under Measure 49. *See* ORS 28.010 to 28.160; *see also* ORS 215.185(1) (providing that a person whose interest is or may be affected by an unlawful structure or land use may "in addition to other remedies provided by law, institute injunction, mandamus, abatement, or other appropriate proceedings to prevent, temporarily or permanently enjoin, abate, or remove the unlawful location, construction, maintenance, repair, alteration, or use").[5]

Moreover, we are not aware of anything in Measure 49 that would prevent CEC or petitioners from litigating the validity of the Measure 37 waiver as part of a separate proceeding to determine CEC's rights under Measure 49, whether that proceeding is at the local level or in a circuit court. Likewise, because this case became moot before the

---

[4] Sections 6, 7, and 9 of Measure 49 provide a forum and procedural path for those claimants who elect remedies under those sections of Measure 49. As far as we can tell, subsection 5(3) does not specify a particular procedural path for a "vested rights" determination. Presumably, regardless of what "forum" the voters and the *Corey* court envisioned, Measure 49 provides CEC with that same "forum" and "opportunity" to challenge the effects of that measure and to assert a broader understanding of the relief available under subsection 5(3).

[5] ORS 215.185(1) provides:

"In case a building or other structure is, or is proposed to be, located, constructed, maintained, repaired, altered, or used, or any land is, or is proposed to be, used, in violation of an ordinance or regulation designed to implement a comprehensive plan, the governing body of the county or a person whose interest in real property in the county is or may be affected by the violation, may, in addition to other remedies provided by law, institute injunction, mandamus, abatement, or other appropriate proceedings to prevent, temporarily or permanently enjoin, abate, or remove the unlawful location, construction, maintenance, repair, alteration, or use. When a temporary restraining order is granted in a suit instituted by a person who is not exempt from furnishing bonds or undertakings under ORS 22.010, the person shall furnish undertaking as provided in ORCP 82 A(1)."

parties had an opportunity to conclusively litigate the merits of the waiver, the parties would not be precluded from again litigating its validity in a subsequent proceeding to establish CEC's rights under Measure 49, to the extent that the issue arises. *See Drews v. EBI Companies*, 310 Or 134, 139-40, 795 P2d 531 (1990) (claim and issue preclusion require that the initial action or issue be "finally" adjudicated). Thus, whether the validity of the Measure 37 waiver is litigated at the local level, in a declaratory relief action, or otherwise, it is our understanding that the parties have an opportunity in another forum to make the same arguments that they have made in this case—as well as additional arguments—under Measure 49, the statute that now governs CEC's rights.

Given that any entitlement to just compensation based on a "vested rights" theory must be finally adjudicated under Measure 49, *Corey*, 344 Or at 466, it becomes apparent that this court's determination regarding the validity of CEC's Measure 37 waiver—the issue presented in this appeal—would not affect the rights and obligations of the parties. *See Hamel*, 330 Or at 184 (case must be dismissed as moot if it is impossible for the court to grant "effectual relief"). A decision by this court would not give CEC any effectual relief, because even a *valid* Measure 37 waiver does not, by itself, have any "continuing viability." That is, a Measure 37 waiver has continuing legal effect only to the extent that a property owner can establish a "common law vested right on the effective date of [Measure 49] to complete and continue the use described in the waiver." Thus, our determination regarding the validity of the Measure 37 waiver, standing alone, is not sufficient to give CEC any rights to complete or continue the use of the transmission line under Measure 49.

Conversely, even if this court were to conclude that CEC's waiver was somehow defective, nothing would prevent CEC from seeking "just compensation" under a "broader" construction of subsection 5(3) of Measure 49 in a separate proceeding. *Corey*, 344 Or at 466 (explaining that, in a separate proceeding, Measure 37 claimants could pursue a broader construction of "vested rights" as used in subsection 5(3) of Measure 49). That is not to say that a Measure 37 claimant would prevail under such a theory; it is simply to say that this court's decision regarding the validity of a

Measure 37 waiver does not resolve the parties' respective rights and obligations under Measure 49, the statute that now governs them.[6]

We recognize that the question before us is a close one, complicated by the unique nature of Measure 49 and the fact that it does not set out an explicit procedural path for claimants seeking to establish a vested right under subsection 5(3). We also appreciate petitioners' desire to obtain answers in this case that could resolve issues likely to arise (or that have already arisen) in other litigation under Measure 49. Although the issue is not free from doubt,[7] we simply are not convinced that those potential collateral effects are sufficient to allow this court to issue what is, at its core, an advisory opinion regarding an issue that is to be properly decided under another statute in another forum. *See PGE v. Int'l Brotherhood of Electrical Workers*, 206 Or App 662, 667, 138 P3d 857, *adh'd to as modified on recons*, 209 Or App 77, 146 P3d 333 (2006) (fact that leaving the trial court's judgment in place "may prevent defendant from arbitrating

---

[6] We express no opinion on whether a "valid" Measure 37 waiver is a prerequisite to the acquisition of "vested rights" under Measure 49, as petitioners contend. We simply note that, although Measure 49 does not specifically refer to a "valid" waiver, *Holmes* and other Oregon cases concerning "vested rights" appear to presume that development was "lawful" when it was undertaken—an issue that the concurrence explores in more detail. 226 Or App at 15-17 (Sercombe, J., concurring). *See Holmes*, 265 Or at 196-97 (explaining that "vested rights" permit a property owner to complete construction on a nonconforming use, and describing a nonconforming use as "one which lawfully existed prior to the enactment of a zoning ordinance and which may be maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area").

[7] *Compare State v. Snyder*, 337 Or 410, 419, 97 P3d 1181 (2004) (concluding that, even though the defendant was no longer challenging his conviction, the Court of Appeals "construction and application of the DUII statutes will be controlling on trial courts, the state, and future defendants[,]" thereby having a "practical effect" on the state); *and id.* (citing *Hart v. Paulus*, 296 Or 352, 357-58, 676 P2d 1384 (1984), for the proposition that the " 'possibility' that [a] court decision 'may affect respondent's future action' meant case was justiciable despite argument that decision would have no 'practical consequence' "), *with Brumnett v. PSRB*, 315 Or 402, 407, 848 P2d 1194 (1993) (the "mere possibility that the state might seek such an order [requiring the petitioner to pay for the cost of his care] at some future date is not sufficient to make dismissal inappropriate," where the state had "not said that it intend[ed] to seek any reimbursement from petitioner"), *and State v. Smith*, 223 Or App 250, 252, 195 P3d 467, 468 (2008) ("[T]he mere possibility of [a future criminal proceeding] occurring is not enough to cause a decision in this case [involving a probation violation that could affect a future criminal history score] to have any practical effect on defendant's rights.").

future grievances similar to the ones at issue here" is not a "practical effect" that saves the case from mootness) (citing *Kerr*, 340 Or 241). In light of Measure 49, the trial court's judgment regarding the validity of the Measure 37 waiver is not, strictly speaking, the source of any practical effects on the *rights* of the parties. *See Houston v. Brown*, 221 Or App 208, 211, 190 P3d 427 (2008) (recognizing that an "implicit predicate" to any exception to the mootness doctrine for "collateral consequences" is that "the gravamen of the underlying action that results in the judgment or order on appeal must be the source of the collateral consequences"). Said another way, if the trial court's judgment regarding the validity of CEC's Measure 37 waiver is left undisturbed by this court, the parties' rights will not be prejudiced; rather, the parties will be left to argue in another forum whether CEC is entitled to "just compensation" under Measure 49.

In sum, *Corey* teaches, first, that a Measure 37 order has "continuing viability" only where a Measure 37 claimant can establish "vested rights" under subsection 5(3) of Measure 49, and, second, that a final determination as to whether a Measure 37 claimant has established those rights must occur in a separate proceeding under Measure 49. Consequently, a determination by this court as to the validity of the underlying waiver will not conclusively resolve the merits of any claim to just compensation under Measure 49, and an opinion by this court concerning the validity of CEC's Measure 37 claim is nothing more than an advisory opinion regarding CEC's rights under Measure 49. For those reasons, we conclude that, despite any differences between this case and *Corey*, the same result obtains in both. The issue before this court arises under Measure 37; CEC's entitlement to "just compensation," if any, now depends entirely on Measure 49. Because CEC's development rights no longer derive from Measure 37 but, rather, from Measure 49, a decision regarding the validity of the Measure 37 waiver in this case will have no practical effect on the rights and obligations of the parties; rather, those rights and obligations must be adjudicated under a different statute in a separate proceeding.

As a final matter, we emphasize the limited nature of our holding. We are *not* adjudicating any of CEC's rights

under Measure 37 or Measure 49. Rather, we hold only that CEC's right to "just compensation" under Measure 49, which may include issues regarding the validity of the Measure 37 waiver, must be decided under Measure 49 in the first instance, in a forum in which effectual relief can actually be granted under the governing statute.

Appeal dismissed as moot.

**SERCOMBE, J.,** concurring.

I concur with the result reached by the majority for different reasons. I agree that a Measure 37 waiver has no legal consequence after the enactment of Measure 49 and that a judicial decision about the validity of that waiver has no practical effect, except when the Measure 37 claimant "has a common law vested right * * * to complete the use described in the waiver." Or Laws 2007, ch 424, § 5(3). I also agree that CEC did not obtain a "common law vested right" to complete or continue constructing its electrical transmission line uses. However, the use failed to vest, in my view, because CEC constructed the line during a time when that transmission line use was unlawful under the county's zoning ordinances and a variance to that proscription, the Measure 37 waiver, was not yet final. Until the restrictive zoning ordinances ceased to apply, any use in derogation of general law was not lawful and could not have vested. Consequently, the exception under section 5(3) of Measure 49 does not apply, and this case is not justiciable.

As explained in *Corey v. DLCD*, 344 Or 457, 466, 184 P3d 1109 (2008), the phrase "common law vested right * * * to complete and continue the use described in the waiver" refers "to broadly applicable legal precedents describing a property owner's rights *when land use laws are enacted that make a partially finished project unlawful. See, e.g., Clackamas Co. v. Holmes*, 265 Or 193, 197, 508 P2d 190 (1973) (describing 'vested rights' in those terms)." (Emphasis added.) The broadly applicable legal precedents—*Holmes* and other Oregon "common law vested rights" cases—are those cases involving uses "which lawfully existed prior to the enactment of a zoning ordinance and which may be maintained after the effective date of the ordinance although [they do] not comply with the use restrictions applicable to the

area." *Holmes*, 265 Or at 196-97 (citing Robert M. Anderson, 1 *American Law of Zoning* 306, § 6.01 (1968)). That vested right applies not only to those [uses] actually in existence but also to uses which are in various stages of development when the zoning ordinance is enacted." *Id*. The point at which a landowner has proceeded "far enough with the proposed construction to have acquired a vested right" depends on whether there has been substantial commencement of construction or the incurring of "substantial costs toward completion of the job," as well as,

> "the good faith of the landowner, whether or not he had notice of any proposed zoning or amendatory zoning before starting his improvements, the type of expenditures, i.e., whether expenditures have any relation to the completed project or could apply to various other uses of the land, the kind of project, the location and ultimate cost. Also, the acts of the landowner should rise beyond mere contemplated use or preparation, such as leveling of land, boring test holes, or preliminary negotiations with contractors or architects."

*Id*. at 197-99 (citations omitted).

*Holmes* treats as a "vested right" the right to continue a "nonconforming use" that "lawfully existed," which it defines to include uses "actually in existence but also * * * uses which are in various stages of development when the zoning ordinance is enacted." *Id*. at 196-97. ORS 215.130(5) further regulates existing uses which become nonconforming by a change of county zoning law. The statute provides that the "lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued." Subsequent to *Holmes*, we have treated vested rights to develop property "to the same limitations that apply to nonconforming uses generally," because "not to do so would yield incongruous results." *Fountain Village Development Co. v. Multnomah Cty.*, 176 Or App 213, 221, 31 P3d 458 (2001), *rev den*, 334 Or 411 (2002). Thus, the threshold question on whether CEC's right to complete or continue its transmission line uses exists as a "common law vested right" under section 5(3) of Measure 49, is whether the pursuit or maintenance of that use was "lawful," notwithstanding an appeal of the allowance of the use by a Measure 37 waiver. If the construction and maintenance of

that use was lawful, then the use may continue as a use that has become nonconforming by the enactment of Measure 49.

In the few Oregon cases in which property owners have established "common law vested rights" to continue a nonconforming use, the prior lawfulness of that use was not in dispute. *See, e.g., Holmes*; *Eklund v. Clackamas County*, 36 Or App 73, 81, 583 P2d 567 (1978), *overruled on other grounds by Forman v. Clatsop County*, 63 Or App 617, 665 P2d 365 (1983). I am not aware of any Oregon cases in which a property owner has acquired "vested rights" where construction was undertaken and partially completed *while the right to begin construction was itself at issue in pending litigation.*

I conclude that CEC's expanded transmission line use of the affected real property is not a "lawful use" under a Measure 37 waiver for purposes of vesting until the waiver is final and is no longer disputed. That conclusion results from the fundamental nature of a Measure 37 waiver. But for the Measure 37 waiver, construction of the transmission lines and use of the easements for that use are unlawful. Within counties, ORS 215.190 makes it unlawful to use land or construct a structure in violation of a county zoning law.[1] The applicable county zoning laws preclude the expanded transmission lines without a conditional use permit.[2]

CEC's Measure 37 waiver operated as a variance or exception to otherwise applicable law that makes the transmission line use unlawful. As we noted in *Bienz v. City of Dayton,* 29 Or App 761, 779, 566 P2d 904, *rev den,* 280 Or 171 (1977), "[a]ny variance by definition is a use of property which is otherwise expressly prohibited by law." "A variance is an authorization for * * * the establishment or maintenance of a use of land, which is prohibited by a zoning

---

[1] ORS 215.190 provides:

"No person shall locate, construct, maintain, repair, alter, or use a building or other structure or use or transfer land in violation of an ordinance or regulation authorized by ORS 215.010 to 215.190 and 215.402 to 215.438."

[2] The board of commissioners found that "the SM zoning and the conditional use permit process [are] land use regulations restricting the desired use of an above ground upgrade of [CEC's] electricity transmission line. These regulations are County land use regulations, which are subject to Measure 37 claims." Deschutes County Order No. 2005-069, section 1, Exhibit "A," at 3.

ordinance." Patricia E. Salkin, 2 *American Law of Zoning* § 13:1, 13-4 (5th ed 2008) (footnote omitted). "Variances are designed to correct maladjustments and inequities in the operation of general regulations." *Id.* at 13-5. The variance allowed by a Measure 37 waiver is intended to correct inequities caused by the application of post-acquisition laws that diminish the value of real property.

Like any other use variance, however, a Measure 37 waiver operates in derogation of local zoning provisions, local comprehensive plans, and the statewide planning goals. A "use variance" allows an otherwise prohibited use in a zone; an "area" variance changes the siting requirements for an otherwise lawful use. A decision on an "area variance" is entitled to the "presumption of regularity," while a "use variance" is not presumptively valid. *Hill v. Marion Co. Bd. of Comm.*, 12 Or App 242, 249, 506 P2d 519 (1973).

Because a Measure 37 waiver operates in derogation of law, because the use variance allows an otherwise unpermitted use, the unlawful status of the desired use continues until the waiver is final and effective. The court gives similar effect to a preliminary land use approval during the pendency of final approval of the change in a multi-step land use decisional process. In *Mason v. Mountain River Estates*, 73 Or App 334, 698 P2d 529, *rev den*, 299 Or 314 (1985), the court held that no vested rights were created by construction after preliminary approval of a planned unit development plan. Instead, the uses remained unlawful until final planned unit development approval occurred. Although the legality of the uses prior to final PUD approval was a matter of ordinance in *Mason*, a similar principle applies here. The general zoning laws of the county made CEC's transmission line uses unlawful until the Measure 37 use variance became final.

Because CEC constructed its transmission lines before that time, its use of the easements for an expanded transmission line was unlawful and therefore could not have vested under *Holmes*. That use fails to qualify as a "common law vested right" under section 5 of Measure 49, even if CEC's Measure 37 waiver were valid. Consequently, any

determination about the validity of CEC's Measure 37 waiver would have no practical effect.

*Holmes* supplies a second reason why CEC's Measure 37 waiver failed to vest under section 5(3) of Measure 49. One of the factors that courts have universally considered with respect to "vested rights" is the "good faith" of the landowner. *See Holmes*, 265 Or at 198 (factors that "should be taken into consideration" include "the good faith of the landowner [and] whether or not he had notice of any proposed zoning or amendatory zoning before starting his improvements"); *Eklund*, 36 Or App at 81 (considering "good faith of the landowner in making expenditures"). *Holmes* makes this type of anticipatory "good faith" a factor in the vested right calculus. Where the lawfulness of the use itself is at issue, however, a more certain result obtains. The general common-law rule is that "[a] landowner lacks the requisite good faith when he proceeds with construction before an appeal period has expired." Salkin, 2 *American Law of Zoning* § 12:13 at 12-46 (footnote omitted). For example, in *Donadio v. Cunningham*, 58 NJ 309, 277 A2d 375 (1971), the landowner argued that it had acquired a vested right in a building permit as a result of construction undertaken after the trial court had rejected a challenge to the issuance of the permit but before the time to appeal that decision had expired. The court explained:

> "*We conceive the sound principle to be that no such overriding rights may be acquired when the acts relied upon are done prior to the end of the appeal period, so long as the rule exists that the state of legislation at the time of the decision of the case is controlling, even at the appellate level.* A municipality should, in the public interest, be afforded an opportunity to amend its zoning ordinance and to take an appeal from an adverse decision. A landowner should not be able to thwart that public interest by a 'bootstrap' operation and by winning an unseemly race. This should be so whether or not the issuance of the building permit is subsequently sustained in the litigation. *And, of course, an owner can acquire no additional rights by starting or continuing construction after an appeal has been taken. What we have said represents the general rule*, 2 Rathkopf, Law of Zoning and Planning 263 (Supp 1970) * * *. The reason for the rule is particularly apparent here. Plaintiffs' and other

opposition to the proposed restaurant in and out of court had been strong and [the landowner] could reasonably have expected some further amendment of the zoning ordinance or an appeal from the trial court judgment by either plaintiffs or the town. *Its commencement of building operations can be considered as nothing more than a hasty effort to attempt to acquire an unassailable position to which it equitably should not be entitled.*"

*Id.* at 323, 277 A2d at 382-83 (emphasis added).

Other courts have reached similar results, sometimes conflating the concepts of reasonable reliance and good faith. *See, e.g., Ebzery v. City of Sheridan*, 982 P2d 1251, 1257 (Wyo 1999) ("It has been recognized, however, that a property owner must act in good faith to acquire vested rights in a variance, and the reliance on the variance must be reasonable. * * * Actions taken in reliance on a variance or permit while the time for appeal is pending are inherently unreasonable."); *State ex rel Cities Service Oil Co. v. Board of Appeals*, 21 Wis 2d 516, 529, 124 NW2d 809, 817 (1963) ("Once the appellants received notice of this appeal and the claim that the permit violated the zoning ordinance, they thereafter proceeded at their peril in incurring expenditures in reliance on the permit."); *Grandview Baptist Church v. Zoning Bd. of Adjustment of City of Davenport*, 301 NW2d 704, 709 (Iowa 1981) (a landowner cannot invoke the doctrine of vested rights when an appeal of a permit is pending because it would "deprive the objectors of the fruits of their appeal"). In fact, Pennsylvania courts have traditionally treated the expiration of an appeal period as a separate factor that a court must consider in determining whether a property owner has acquired vested rights in a permit. *See, e.g., Petrosky v. Zoning Hearing Bd. of Upper Chichester Tp., Delaware County*, 485 Pa 501, 507, 402 A2d 1385, 1388 (1979) (concluding that, in determining whether one has acquired vested rights as a result of a permit issued by the government, the court should consider the landowner's "diligence in attempting to comply with the law"; "good faith throughout the proceedings"; "expenditure of substantial unrecoverable funds"; *"the expiration without appeal of the period during which an appeal could have been taken from the issuance of a permit"* and "the insufficiency of the evidence to prove that individual

property rights or the public health, safety or welfare would be adversely affected by the use of the permit") (emphasis added).

In light of the above common-law precedents, I conclude that, by using the term *"common law* vested right," the voters did not intend to extend the protections of subsection 5(3) of Measure 49 to those landowners who began construction while the validity of their Measure 37 waiver was still being litigated. At "common law," a property owner does not acquire "vested rights" by partially constructing a use under an allowed variance in the face of a challenge to the right to begin construction. Whether that rule derives from the requirement of "good faith" or exists because the use remains as unlawful until a variance is final, the result is the same: A property owner does not acquire "vested rights" to complete and continue a use that is the subject of pending litigation.

For that reason, I believe that CEC's partial construction, which was undertaken while its Measure 37 waiver was being challenged in writ of review proceedings, was insufficient to create a "common law vested right." Consequently, this case is not materially distinguishable from *Corey* with respect to justiciability. After December 6, 2007 (the effective date of Measure 49), Measure 49 deprived the waiver at issue in the present case of any continuing viability, and none of the parties can gain anything from review in this court. *Corey*, 344 Or at 467. Accordingly, the appeal must be dismissed as moot.