Certified by the Attorney General August 4, review denied
August 23, 1967

# IN THE MATTER OF OREGON LAWS 1967, CHAPTER 364, SECTION 4, BALLOT TITLE

431 P. 2d 1

No appearances.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

PER CURIAM.

The proponents of a measure to amend the property tax limitations of the Oregon Constitution by referendum, have filed a petition with the Secretary of State. The 1967 Legislative Assembly amended the prior statutes relating to the ballot title for a referendum measure by Chapter 364 of Oregon Laws 1967. The several prior statutes, as amended, have now been compiled in that chapter.①

---

Note: Matter in italics in an amended section is new; matter in brackets is existing law to be omitted; complete new sections begin with **Section.**

① CHAPTER 364

---

AN ACT                              [HB 1097]

Relating to ballot titles; creating new provisions; amending ORS 254.060 and 254.070; repealing ORS 254.080; and declaring an emergency.

*Be It Enacted by the People of the State of Oregon:*

Section 1. ORS 254.060 is amended to read:

254.060. (1) When a copy of the petition for any measure to be referred to the people of the state or of any district composed of two or more counties, either by the initiative or referendum, is filed with the Secretary of State, as provided by ORS 254.030, [or when the submission to the people of any proposed constitutional amendment or measure is ordered by the Legislative Assembly,] the Secretary of State shall immediately transmit [two] *three* copies thereof to the Attorney General.

(2) Within [10] *five* days after receiving the copies the Attorney General shall provide a ballot title for the measure and [return] *deliver* [one copy] *two copies* to the [Secretary of State] *Supreme Court,* together with the ballot title so prepared by him.

(3) A copy of the ballot title *prepared under subsection (2) of this section* shall be furnished by the [Secretary of State with his approved form of any initiative or referendum petition, as provided by ORS 254.030,] *Attorney General* to the persons or organizations under whose authority the measure is initiated or referred.

**Section 2.** Sections 3 to 6 of this Act are added to and made a part of ORS 254.030 to 254.100.

**Section 3.** (1) When the Legislative Assembly orders a proposed constitutional amendment or other measure submitted to the people, a ballot title for the measure may be prepared by the assembly or by a committee consisting of members of each house created and governed by joint resolution. The ballot title shall consist of a caption not exceeding six words in length by which the measure is commonly referred to or spoken of, followed by an abbreviated statement not exceeding 75 words in length of the chief purpose of the measure. A title so prepared shall be a concise and impartial statement of the purpose of the measure, and when prepared shall be filed with the Secretary of State.

(2) When a ballot title and the measure which it describes have been filed with the Secretary of State, the secretary shall immediately file two certified copies of the measure and title with the Supreme Court for review.

(3) If the title is not prepared by the Legislative Assembly, when the measure is filed with the Secretary of State, copies shall be transmitted to the Attorney General and a title prepared as provided by ORS 254.060.

**Section 4.** (1) Upon receiving copies of a measure and a ballot title the Supreme Court shall review the title to determine if it meets the requirements of ORS 254.070, if the title was prepared by the Attorney General, or the requirements set forth in section 3 of this 1967 Act, if it was prepared by the Legislative Assembly. If the Supreme Court finds that the ballot title is sufficient, it shall, within 20 days after receiving the title, file a copy of the measure and title with the Secretary of State.

(2) If the Supreme Court finds that the ballot title does not meet the requirements of ORS 254.070, if prepared by the Attorney General, or the requirements set forth in section 3 of this 1967 Act, if prepared by the Legislative Assembly, the court shall, within 20 days after receiving copies of the measure and title, write a substitute ballot title and file it with the Secretary of State.

**Section 5.** (1) Any person dissatisfied with a ballot title referred to the Supreme Court under ORS 254.060 or under section 3 of this 1967 Act may petition the court praying for a different title and setting forth the reasons why the title filed with the court is insufficient or unfair. If a petition is filed within 10 days after the title is filed with the court, the court shall review the title and measure, hear arguments, if any, and certify to the Secretary of State a title for the measure which meets the requirements of ORS 254.070, if the title was prepared by the Attorney General, or the requirements set forth in section 3 of this 1967 Act, if the title was prepared by the Legislative Assembly.

(2) The review by the Supreme Court shall be determined expeditiously as may be appropriate for the orderly and timely cir-

culation of initiative or referendum petitions or for the orderly and timely conduct of the election at which the measure is to be submitted to the voters.

**Section 6.** The ballot title prepared and filed with the Secretary of State as provided by sections 4 and 5 of this 1967 Act shall be printed on the ballot and in the voters' pamphlet.

Section 7. ORS 254.070 is amended to read:

254.070. The ballot title mentioned in ORS 254.060 shall be used and printed on the covers of the petition when in circulation. The ballot title shall consist of a caption not exceeding six words in length by which the measure is commonly referred to or spoken of, followed by an abbreviated statement not exceeding [25] 75 words in length of the chief purpose of the measure. The caption only shall be printed in the foot margin of each signature sheet of the petition. The ballot title shall be printed with the number of the measure on the official ballot. [In writing the ballot title the Attorney General shall, to the best of his ability, give a true and impartial statement of the purpose of the measure and in such language that the same shall not be intentionally an argument or likely to create prejudice either for or against the measure.] *The ballot title prepared by the Attorney General shall be a concise and impartial statement of the purpose of the measure.*

**Section 8.** ORS 254.080 is repealed.

**Section 9.** This Act being necessary for the immediate preservation of the public peace, health and safety, an emergency is declared to exist, and this Act shall take effect upon its passage.

Approved by the Governor June 12, 1967.

Filed in the office of Secretary of State June 12, 1967.

■■ We have received the copies of the petition and ballot title prepared by the Attorney General as specified by Section 1 of the statute. Section 4 states that it is now our duty to "review" the title prepared by the Attorney General and either approve it or write a substitute title and file it with the Secretary of State. It is proposed that we do this without any form of judicial process; without parties being summoned or otherwise appearing who would be governed by the action taken, and without rendering an enforceable judgment. It is clear that the statute attempts to require the court to render a nonjudicial, advisory

opinion. It would be nonjudicial because our "review" would not conclude or vindicate any right or remedy nor bind anyone at all. *In Re Opinions of the Justices,* 1923, 209 Ala 593, 96 So 487 at 489. It would be advisory because our preparation of a ballot title in this or any other referendum measure would not preclude later judicial action by one whose rights may have been affected by adoption of the proposed measure. *Opinion of the Justices,* 1961, 157 Maine 152, 170 A2d 652.

■ The first doctrine to evolve in this nation's constitutional jurisprudence was that courts are limited to the exercise of the judicial function and should not and cannot render advisory opinions. When first required by Congress to act in a nonjudicial capacity, Chief Justice John Jay responded:

> "* * * under the Constitution, the Government was divided into three 'distinct and independent branches, and that it is the duty of each to abstain from and to oppose encroachment on either, that neither the Legislative nor the Executive branch can constitutionally assign to the Judicial any duties but such as are properly judicial, and to be performed in a judicial manner'; * * *." 1 Warren, The Supreme Court in United States History, p 70, referring in part to *Hayburn's Case,* 2 US 408 (1792).

A like request by President Washington received the same answer. Haines, The Role of the Supreme Court in American Government and Politics, 1789-1835, 1944, pp 143-148. The doctrine became equally well-imbedded in the jurisprudence of the state courts.[2] This has

---

[2] The highest courts in Kentucky, Vermont, Delaware and Alabama have acceded to legislative or executive requests for advisory opinions. See Harv L Rev 970 (1924), Advisory Opinions,

best been expressed by Judge Cardozo when a member of the New York Court of Appeals in the case of *In Re Workmen's Compensation Fund,* 1918, 224 NY 13, 119 NE 1027 at 1028, where he wrote:

"* * * The function of the courts is to determine controversies between litigants. Interstate Commerce Commission v. Brimson, 154 U. S. 447, 475, 14 Sup. Ct. 1125, 38 L. Ed. 1047; Osborn v. Bank of U. S., 9 Wheat. 738, 819, 6 L. Ed. 204; Mills v. Green, 159 U. S. 651, 16 Sup. Ct. 132, 40 L. Ed. 293; Marye v. Parsons, 114 U. S. 325, 330, 5 Sup. Ct. 962, 29 L. Ed. 205; Am. Book Co. v. Kansas, 193 U. S. 49, 24 Sup. Ct. 394, 48 L. Ed. 613. They do not give advisory opinions. The giving of such opinions is not the exercise of the judicial function. Thayer, Cases on Constitutional Law, vol. 1, p. 175; American Doctrine of Const. Law, 7 Harvard Law Review, 153. It is true that in England the custom of the Constitution makes the judges of the high court the assistants of the Lords, and requires them, upon the demand of the Lords, to give 'consultative' opinions. Thayer, supra; Opinion of the Justices, 126 Mass. 557, 562. But that custom is a survival of the days when the judges were members of the great council of the realm. Thayer, supra; T. E. May, Parliamentary Practice (12th Ed.) pp. 55, 56, 182; Anson, Law and Custom of the Constitution, pp. 45, 52, 449. In the United States no such duty attaches to the judicial office in the absence of express provision of the Constitution. Dinan v. Swig, 223 Mass. 516, 519, 112 N. E. 91; Opinion of Court, 62 N. H. 704, 706; Rice v. Austin, 19 Minn. 103 (Gil. 74) 18 Am. Rep. 330. Even in those states, e.g., Massachusetts, Maine, and New Hampshire, where such provisions are found, the opinions thus given have not the

and In re Opinions of the Justices, *supra,* 209 Ala 592. However, in the Alabama case the court explained at length that such opinions are given only because they are advisory and not binding.

quality of judicial authority. The judges then act, 'not as a court, but as the constitutional advisers of the other departments.' Opinion of Justices, 126 Mass. 557, 566; Laughlin v. Portland, 111 Me. 486, 497, 90 Atl. 318, 51 L. R. A. (N. S.) 1143, Ann. Cas. 1916C, 734."[9]

"* * * We are asked by an omnibus answer to an omnibus question to adjudge the rights of all. That is not the way in which a system of case law develops. We deal with the particular instance; and we wait till it arises."

This court, too, has refused to issue advisory opinions. We have said that:

"* * * We have no constitutional provision in Oregon granting authority to the courts to render advisory opinions. In the absence of such constitutional authority courts cannot render valid advisory opinions: *Oregon Creamery Manufacturers Association et al. v. White et al.,* [1938], 159 Or. 99, 78 P. (2d) 572." *Hickey v. City of Portland,* 1941, 165 Or 594 at 598, 109 P2d 594, 596.

■ The Oregon Constitution is, in fact, prohibitive, not permissive, Art III, § 1 provides:

"The powers of the Government shall be divided into three seperate (sic) departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with of-

[9] In addition to several later New York cases, the Cardozo opinion has been cited with approval as follows:

Galloway v. Truesdell, Nev, (Case No. 5173) 422 P2d 237 (1967).

Uhlmann v. Wrenn, 97 Ariz 366, 401 P2d 113 (1965).

Richardson v. County Court of Kanawha County, 138 W Va 885, 78 SE2d 569 (1953).

In Re Opinion of the Justices, 115 Vt 524, 64 A2d 169 (1949).

Langer v. State, 69 ND 129, 284 NW 238 (1939).

County Board of Education, Etc. v. Borgen, 192 Minn 512, 257 NW 92 (1934).

Morrow v. Corbin, 122 Tex 553, 62 SW2d 641 (1933).

ficial duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

That section has been said to mean:

"* * * This [restriction] not only prevents an assumption by either department of power not properly belonging to it, but also prohibits the imposition, by one, of any duty upon either of the others not within the scope of its jurisdiction; and 'it is the duty of each to abstain from and to oppose encroachments on either.'" In the Matter of the Application of the Senate, 10 Minn R (Gilfillan) 56 at p 57 (1865).

Unlike the former statute, the present statute seeks to have the court perform a nonjudicial function, contrary to the prohibition of Art III, § 1.

In 1935, an effort to enact a statute requiring justices of this court to give advisory opinions appears to have been abandoned following a strong opinion of the Attorney General that such an act would violate Art III, § 1, of the Oregon Constitution. See Opinions of the Attorney General, 1934-36, p 530. If we were to undertake to review an uncontested ballot title under Section 4, ch 364, we would establish a precedent under which by similar legislative act, we would be required to review every opinion of the Attorney General, a result so inconsistent with the judicial function of this court as to require no comment.

We have seen that a particular vice of a nonjudicial opinion is that it is binding upon no one. The illusory validity of a court approved ballot title should not deceive those interested in a referendum measure. It is no guarantee that the title could be sustained in later actual litigation by affected parties if it were

then established that the title approved by the court was deceptive.

■ We adhere to the long established doctrine that restrains the courts from performing nonjudicial functions and respectfully decline to review the ballot title pursuant to Section 4 of the statute.

McALLISTER, J., specially concurring.

The preparation of a ballot title pursuant to Chapter 364, Oregon Laws 1967, is either a legislative or an executive function. The drafting of a ballot title by this court would be the exercise by the judicial department of a function of another department of government. This court is prohibited by the express language of the constitution from exercising a legislative or executive function and the same language prohibits the legislature from imposing a legislative or executive function upon the court. I prefer to rest our decision on the separation of powers doctrine and therefore concur in the result of the majority opinion.