Argued in Eugene November 4, 1977, dismissed February 8, 1978

In the Matter of the Constitutional Test of House Bill
3017, Oregon Laws, 1977
OREGON MEDICAL ASSOCIATION, *Petitioner,*
*v.*
RAWLS, *Respondent.*
(SC 25377)
574 P2d 1103

Charles D. Ruttan, Portland, argued the cause for petitioner. With him on the brief were Thomas E. Cooney and Morrison, Dunn, Cohen, Miller & Carney.

Jan P. Londahl, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General.

J. Michael Alexander, Salem, argued the cause for Oregon Trial Lawyers Association as amicus curiae.

With him on the brief was Charles D. Burt of Brown, Burt & Swanson, Salem.

Before Denecke, Chief Justice, and Holman, Bryson, Lent, and Linde, Justices.

LINDE, J.

**LINDE, J.**

ORS chapter 752, enacted in 1975 and amended in 1977, provides a plan under which participating physicians may secure themselves against personal liability for professional negligence. If a physician maintains professional liability insurance for specified amounts and contributes to an excess liability fund established under the statute, any claim for damages that may arise from his professional negligence can be collected only from his insurance coverage and thereafter from the fund.

The 1975 version of the statute was brought before this court in *Oregon Medical Association v. Rawls,* 276 Or 1101, 557 P2d 664 (1976). That litigation *(OMA I)* was a declaratory judgment proceeding for a decree declaring ORS chapter 752 to be constitutional. This court agreed with the conclusion of the circuit court that no justiciable controversy existed between the Oregon Medical Association and the defendant, as state insurance commissioner,[1] since both parties asserted that the statute is constitutional. *Id.* at 1105.

---

[1] Since this proceeding was filed, respondent Rawls has been replaced in the office of insurance commissioner, but no motion is before us to substitute his successor. We have no equivalent to Fed Rules Civ Proc 25(d), which provides:

(1) When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may·be entered at any time, but the omission to enter such an order shall not affect the substitution.

(2) When a public officer sues or is sued in his official capacity, he may be described as a party by his official title rather than by name; but the court may require his name to be added.

Usually in litigation involving a public agency, a change in the responsible officials will make no difference, except insofar as a new official may choose to change the policy or position of the agency on the issue in litigation. A question of style may arise if a decision requires the issuance of a decree or order either against a named respondent who no longer holds the office or against an incumbent who is not named as a party. However, the question is not reached in this case.

In the course of amending ORS chapter 752, in 1977, the legislative assembly enacted the following provision for a "judicial examination and judgment" of the chapter's constitutionality by this court:

> The Insurance Commissioner, the Oregon Medical Association, or any other interested party may, by petition to the Supreme Court, commence proceedings for a judicial examination and judgment of the Supreme Court as to the constitutionality and legality of ORS 752.010 to 752.180 and any act or proceeding thereunder. The procedure shall follow the procedure of courts of equity. Jurisdiction shall be acquired pursuant to ORS 28.020 and a justiciable controversy ripe for determination shall be deemed to exist in the event a complaint is filed. The Supreme Court shall have sole and exclusive jurisdiction of proceedings initiated under this section and shall use as evidence the legislative history of the 58th and 59th sessions of the Oregon Legislative Assembly.

ORS 752.190. Pursuant to this section, the same parties as in *OMA I* are again before us in this original proceeding, as much in agreement that ORS chapter 752 is constitutional as they were before.

■ The question is whether such a proceeding as brought by petitioner here, to declare that a statute is constitutional when no party to the proceeding challenges its constitutionality, properly invokes the "judicial power of the state" that is our charge under the constitution. Or Const art VII (am), § 1. It is a question we must necessarily raise on our own motion, as did the United States Supreme Court in the most famous of all cases on judicial review of statutes when Congress appeared to have thrust upon the Court a jurisdiction beyond the federal constitution. *Marbury v. Madison*, 5 US (1 Cranch) 137 (1803). For the reasons that follow, we hold that the present proceeding is not within the judical power.

ORS 752.190, quoted above, contains directives on six separate elements of a proceeding under this statute. It places "sole and exclusive" jurisdiction in this court. It confers standing to initiate the proceeding on one named private association, one named state

[ 296 ]

agency, or "any other interested party." It specifies the procedure to be followed and the issues that may be decided. It specifies the "evidence" to be used in deciding them. Finally, it undertakes to prescribe that "a justiciable controversy ripe for determination shall be deemed to exist." The parties defend the grant of exclusive jurisdiction to this court under section 2 of article VII (amended).[2] We do not reject jurisdiction in this case, *cf. Martin v. Oregon Building Auth.,* 276 Or 135, 554 P2d 126 (1976), nor need we question the grant of standing to these parties along with others interested in the plan at issue[3] or the use of declaratory judgment procedure. Legislative prescription of the specific "evidence" in an adjudication would raise obvious difficulties if it were meant to be exclusive, but we do not reach these difficulties here. ORS 752.190 fails insofar as it directs the court to "deem" the present proceeding to be a "justiciable controversy."

It is not apparent between whom the controversy is supposed to exist. So far as we are told, there is none between the Oregon Medical Association and the insurance commissioner, despite the insertion of the "versus" between their names on the pleadings.[4] The

---

[2] Or Const art VII (am), § 2:

> The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law. But the supreme court may, in its own discretion, take original jurisdiction in mandamus, quo warranto and habeas corpus proceedings.

We do not in this case consider whether there are limits to what may be "otherwise provided by law," for instance where a right to jury trial may be involved.

[3] *See Marbet v. Portland General Elec. Co.,* 277 Or 447, 561 P2d 154 (1977). Here the question is not to whom the legislature may accord standing to assert a justiciable claim. But the pleading by which a plaintiff or petitioner invokes the judicial power of the state must state a claim that on its face is adequate to set the judicial power in motion.

[4] Indeed, one may question whether the government as a party would be heard to have one of its enactments declared unconstitutional against a private party relying on it.

draftsman's confidence that any "petition" or "complaint" filed under ORS 752.190 would ipso facto identify a controversy, let alone a justiciable one, exceeds the limits of legislative clairvoyance.

The need for a party raising a constitutional challenge *against* the malpractice insurance statute is not a technicality. It is essential to responsible adjudication. As a rule it may be assumed that what the legislature has enacted into law is indeed the law of the state. A serious charge that the lawmaker has acted contrary to the state or federal constitution is the exception, and its success is even more exceptional. Such a charge must rest on the demonstrated disregard of a specified constitutional provision. Occasionally a law may be invalid from its inception because it was enacted improperly, *see* Note, *Constitutional Provisions Regulating the Mechanics of Statutory Enactment in Oregon—Effect of Enrollment,* 27 Or L Rev 46 (1947), and cases there cited, or in contravention of some limitation on the legislature in the scheme of government, *see, e.g., Martin v. Oregon Building Auth., supra.* Sometimes the claim is that a state law encroaches on federal responsibilities for interstate commerce, *see, e.g., American Can Co. v. OLCC,* 15 Or App 618, 517 P2d 691 (1973), *review denied* (Or. 1974), or foreign relations, *see, e.g., Zschernig v. Miller,* 389 US 429 (1968). More often the constitutional challenge will invoke a guarantee designed to protect individual rights. Of course, it is the legislature's and the governor's obligation to consider and to respect constitutional constraints in enacting a measure and not to leave constitutionality to adjudication. But the range of potential challenges by different parties on different grounds is wide, and some claims depend on facts and developments that must be speculative at best before they occur. Given this wide and contingent range of possible claimants and claims, the notion of a judicial proceeding to have a statute declared "constitutional" in the abstract, without any concrete challenge having been raised against it, has all the

defects inherent in any undertaking to prove a negative. In effect, it places upon the petitioner the burden to demonstrate, and on the court to satisfy itself, that no claimant under any circumstances could successfully assert any constitutional objection to the law. It is the reverse of *Martin v. Oregon Building Authority, supra,* in which the plaintiff asserted a specific constitutional attack upon the statute. It cast petitioner here in the quixotic role of a defender of the law's virtue against no attack. Such a reversal of roles cannot be made a justiciable controversy by mere declaration.

Certain potential constitutional claims against confining malpractice recoveries to a physician's insurance and the excess liability fund were, of course, anticipated in the legislative discussion and by the present parties in their earlier litigation, which no doubt explains the adoption of ORS 752.190 in 1977. For a view of what these claims might be, we invited the Oregon Trial Lawyers Association to file a brief as amicus curiae in this case. We are grateful to counsel who on behalf of the association responded to this invitation. The amicus brief presents the contentions that the limitation of malpractice recoveries to the stated sources may, if those funds are exhausted, deny a malpractice claimant the "remedy by due course of law for injury done him in his person" guaranteed by article I, section 10, of the constitution, or grant to some citizens "privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens," Or Const art I, § 20, or deny to some persons the equal protection of the laws guaranteed by the federal fourteenth amendment. However, the primary position of amicus curiae is that the present proceeding is not within our judicial power.

The potential contentions mentioned above are perhaps the most obvious but not necessarily the only challenges that could arise against ORS chapter 752. They focus primarily on the potential interests of

future malpractice claimants, although amicus curiae also draws attention to possible claims of discrimination between classes of physicians and perhaps other professionals. The briefs do not speculate on imaginable claims by insurance companies, hospitals, employers, or other parties nor on other possible bases of attack, and we shall not do so on our own motion. For all we know someone will someday plead that ORS chapter 752 was enacted without the necessary quorum or constitutionally required votes. Perhaps no one will ever have valid grounds to complain about this law, but that cannot be decided in what amounts to an ex parte proceeding to declare the law constitutional against all possible claims by all possible future claimants.

■ Another reason precludes adjudication of constitutionality in the abstract. The court's first obligation when a constitutional attack on a law is at all plausible is to determine whether the law may reasonably be given a valid interpretation, because it is assumed that the legislature means to act within constitutional bounds. *See State v. Harmon,* 225 Or 571, 577, 358 P2d 1048 (1961); *Wright v. Blue Mountain Hosp. Dist.,* 214 Or 141, 144, 328 P2d 314 (1958); *Peninsula Drainage Dist. No. 2 v. City of Portland,* 212 Or 398, 418, 320 P2d 277 (1958); *Federal Cartridge Corp. v. Helstrom,* 202 Or 557, 565, 276 P2d 720 (1954). ORS 752.190 itself refers to determining the "legality" of "any act or proceeding" under ORS chapter 752 as well as its constitutionality. This, of course, requires an interpretation of the statute. But no such determination is possible when no "act or proceeding" under the chapter is before a court, and no questions of the statute's interpretation have been presented by the parties. Again, a proceeding that calls upon a court to conduct its own inquiry into hypothetical applications of a statute and possible interpretations to save it from hypothetical constitutional attacks cannot be "deemed" a "justiciable controversy" within the judicial power vested by article VII (amended), section 2.

Finally, the parties suggest that the rule against advisory opinions is subject to exceptions in the discretion of the court, and that an exception should be made in this case because the question presented is of great public importance. But what is demanded here is not an advisory opinion of the kind that is authorized by the constitutions of a number of states. Those opinions are the "opinion of the justices," not of the court, generally rendered on the request of the legislature or the governor in advance of action which thereafter may or may not be taken, and they do not bind the courts in subsequent litigation.[5] Such advisory opinions have not been authorized in Oregon. *In re Ballot Title,* 247 Or 488, 492-495, 431 P2d 1 (1967); *Hickey v. City of Portland,* 165 Or 594, 597-598, 109 P2d 594 (1941); *Oregon Creamery Mfrs. Ass'n v. White,* 159 Or 99, 109-111, 78 P2d 572 (1938). Even where they are allowed, advisory opinions generally deal with questions of governmental organization, powers, or procedures, not with the constitutional rights of individuals.[6]

By contrast, the present proceeding under ORS 752.190 seeks a judgment of this court that will establish the validity of ORS chapter 752 for all future cases, *i.e.* a decision that will foreclose the future assertion in a concrete case of any claim under the Oregon or the federal constitution. Indeed, it was said in oral argument that ORS 752.190 was designed to give physicians this assurance of future immunity under the insurance plan. Even if our "judical power"

---

[5] *See* A. Ellingwood, Departmental Coöperation in State Government 96-160, 223-237 (1918); Field, *The Advisory Opinion—An Analysis,* 24 Ind L J 203, 210-214 (1949); Stevens, *Advisory Opinions—Present Status and an Evaluation,* 34 Wash L Rev 1, 6-7 (1959); Comment, *The State Advisory Opinion in Perspective,* 44 Fordham L Rev 81, 81-83, 103-104 (1975); Note, *Advisory Opinions on the Constitutionality of Statutes,* 69 Harv L Rev 1302, 1303-1304 (1956).

Only in Colorado are advisory opinions issued in the name of the supreme court. Colo Const art VI, § 3.

[6] *See* Field, *supra* note 5, at 220-222; Stevens, *supra* note 5, at 2-3, 5; Comment, *supra* note 5, at 100-101.

under article VII (amended) allowed this, there is reason to question whether such a judgment could be defended as due process of law for entirely unforeseeable future claimants, including some not yet born. *Cf. Mullane v. Central Hanover Bank & Trust Co.,* 339 US 306 (1950). But we reject the view that public importance can make a nonjusticiable case justiciable. The judicial power extends equally to the least important case within its reach and the greatest, but not beyond. It does not extend to quiet anyone's title to the constitutional validity of a statute against the world at large. The petition must be dismissed.

Dismissed.