Argued and submitted May 11, appeal dismissed December 16, 2009

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

DWIGHT EHRENSING,
*Defendant-Respondent.*

Douglas County Circuit Court
06CR2338FE; A134624

223 P3d 1060

Timothy A. Sylwester, Attorney-in-Charge, Capital Cases, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Brian Michaels argued the cause and filed the brief for respondent.

Paul E. Meyer, Douglas County Counsel, filed the brief *amicus curiae* for Douglas County Sheriff.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

WOLLHEIM, J.

Sercombe, J., concurring.

Edmonds, P. J., dissenting.

## WOLLHEIM, J.

In this criminal action, defendant has been charged with unlawful manufacture of marijuana, ORS 475.856, unlawful delivery of marijuana, ORS 475.860 (2005), *amended by* Or Laws 2009, ch 610, § 1, unlawful possession of marijuana, ORS 475.864, and criminal forfeiture of property, ORS 131.550 to 131.602 (2005), *amended by* Or Laws 2009, ch 874, § 5. The state appeals a pretrial order that directed the Douglas County Sheriff to "return Eight (8) ounces of usable packaged marijuana seized from [defendant] to each of the three patients for whom [defendant] was growing marijuana under the Oregon Medical Marijuana Act." We dismiss the appeal because it fails to present any justiciable issue.

The facts are undisputed. Defendant was a designated caregiver and grower for multiple persons who are cardholders under the Oregon Medical Marijuana Act (OMMA), ORS 475.300 to 475.346. The sheriff, acting through his deputies and pursuant to a search warrant, seized a substantial amount of marijuana from defendant's property. Thereafter, defendant was indicted on the charges noted above. The indictment alleged that defendant possessed 150 grams or more of marijuana.

Before trial, defendant moved pursuant to ORS 475.304(5) to have the dried and usable marijuana that had been seized returned to the cardholders for whom defendant was the designated caregiver and grower.[1] At the hearing on the motion, the trial court stated:

> "What I want is eight ounces returned to each of the three participants and then later on, if it doesn't come to trial in a timely way they can apply for more if it's still there and * * * they have to stipulate to quality photography of what was removed as a condition of getting it."

---

[1] ORS 475.304 (2007) was amended by Oregon Laws 2009, chapter 595, section 966. None of those amendments is relevant to this case. ORS 475.304(5) provides:

"All usable marijuana, plants, seedlings and seeds associated with the production of marijuana for a registry identification cardholder by a person responsible for a marijuana grow site are the property of the registry identification cardholder and must be provided to the registry identification cardholder upon request."

The trial court then issued its order on the motion. That order provided:

> "Pursuant to ORS 475.304(5), Douglas County Sheriff shall return Eight (8) ounces of usable packaged marijuana seized from [defendant] to each of the three patients for whom [defendant] was growing marijuana under the Oregon Medical Marijuana Act, as listed below[.]"

The trial court stayed its order for 20 days, during which time the state filed motions to reconsider the order and, if the motion to reconsider was denied, to extend the stay of the order until an appellate judgment issued. In addition, the sheriff filed a motion to intervene, continue the stay of the order, and reconsider the order. Following a hearing on those motions, the trial court allowed the sheriff to intervene and, again, stayed the order, this time for a period of 15 days. Ultimately, the trial court entered an order denying the motions for reconsideration. In response to the motions to reconsider, defendant moved for leave to amend his original motion to include ORS 475.323(2) as a basis for relief.[2] That motion was never acted on by the trial court, and, therefore, defendant's original motion was never amended. The order to return eight ounces of the seized marijuana to each of the three cardholders was executed by the sheriff.

On appeal, the state and the sheriff argue that the trial court erred when it ordered the sheriff to release some of the marijuana that was seized from defendant. The state

---

[2] ORS 475.323(2) provides:

"Any property interest possessed, owned or used in connection with the medical use of marijuana or acts incidental to the medical use of marijuana that has been seized by state or local law enforcement officers may not be harmed, neglected, injured or destroyed while in the possession of any law enforcement agency. A law enforcement agency has no responsibility to maintain live marijuana plants lawfully seized. No such property interest may be forfeited under any provision of law providing for the forfeiture of property other than as a sentence imposed after conviction of a criminal offense. *Usable marijuana and paraphernalia used to administer marijuana that was seized by any law enforcement office shall be returned immediately upon a determination by the district attorney in whose county the property was seized, or the district attorney's designee, that the person from whom the marijuana or paraphernalia used to administer marijuana was seized is entitled to the protections contained in ORS 475.300 to 475.346.* The determination may be evidenced, for example, by a decision not to prosecute, the dismissal of charges or acquittal."

(Emphasis added.)

asserts that, although the order is not now stayed and the sheriff has complied with the order, the state's appeal is not moot because the sheriff continues to hold the rest of the marijuana that defendant contends should be released. Regarding the merits of its appeal, the state contends that the order was not authorized by either ORS 475.323(2) or ORS 133.643.[3]

At oral argument, the state again disclosed that "the sheriff in fact did comply with that [order] by turning over eight ounces to each" of the three patients. The state also conceded that an order by this court reversing the trial court would not grant relief with respect to the released marijuana. Specifically, the state's attorney acknowledged:

> "[T]he reality is that we can't get that marijuana back that has been released to the cardholders. And so, if this court were to issue an order, it's not like the sheriff can go out and collect the marijuana * * *."

Lastly, according to the state at oral argument, in the time since this case has been on appeal, no further requests for disbursements of the marijuana held by the sheriff have been made by the cardholders nor have any further disbursements been released by the sheriff.

As an initial matter, we pause to address the basis of our jurisdiction over the sheriff and the state's appeal.

---

[3] ORS 133.643 provides:

"A motion for the return or restoration of things seized shall be based on the ground that the movant has a valid claim to rightful possession thereof, because:

"(1) The things had been stolen or otherwise converted, and the movant is the owner or rightful possessor;

"(2) The things seized were not in fact subject to seizure under ORS 131.550 to 131.600 or 133.525 to 133.703;

"(3) The movant, by license or otherwise, is lawfully entitled to possess things otherwise subject to seizure under ORS 133.525 to 133.703;

"(4) Although the things seized were subject to seizure under ORS 133.525 to 133.703, the movant is or will be entitled to their return or restoration upon the court's determination that they are no longer needed for evidentiary purposes; or

"(5) The parties in the case have stipulated that the things seized may be returned to the movant."

Previously, we determined by order that we had jurisdiction over the state's appeal because

> "a motion under ORS 475.323(2) is a special statutory proceeding and [ ] the conclusive disposition of a motion under that statute is appealable under ORS 19.205(5). The order being appealed is an order conclusively disposing of a motion under ORS 475.323(2) and, as such, is appealable."

We note, however, that the order from which the appeals are taken is an order pursuant to ORS 475.304(5) and not an order pursuant to ORS 475.323(2). Defendant's original motion was a motion based solely on ORS 475.304(5). In addition, the order itself provides that it is based on ORS 475.304(5). The application of ORS 475.323(2) was not raised by any party until a later hearing on the state's motion to reconsider the order—and, at that time, the party raising the applicability of ORS 475.323(2) was *the state*. As already noted, the trial court ultimately denied the motion to reconsider. In doing so, the trial court made no rulings, comments, or statements regarding the applicability of ORS 475.323(2). Moreover, although defendant moved for leave to amend his original motion to include ORS 475.323(2) as a basis for relief, that leave was never granted and the original motion was never amended. Thus, the order from which the state appeals is an order deciding a motion made solely under ORS 475.304(5).

We need not, however, reexamine the basis for our jurisdiction to determine whether an order based on a motion under ORS 475.304(5) is an appealable special statutory proceeding pursuant to ORS 19.205(5), because we now hold that this appeal is not justiciable because the proceedings are moot or are otherwise not ripe for review.

■ As we have noted before, "[t]his court has an independent obligation to determine whether a case is 'justiciable.' " *Cyrus v. Board of County Commissioners*, 226 Or App 1, 5, 202 P3d 274 (2009) (citing *Oregon Medical Association v. Rawls,* 281 Or 293, 296, 574 P2d 1103 (1978)). Mootness and ripeness are part of that inquiry.

We outlined the relevant precepts regarding mootness in *State v. Panduro*, 224 Or App 180, 182-83, 197 P3d 1111 (2008):

> "The question whether a case is moot is 'part of a larger two-part inquiry into whether a case is justiciable.' * * * The first step is to determine whether 'a case presents a controversy between parties with adverse interests,' and the second step is to determine whether 'the court's decision will have a practical effect on or concerning the rights of the parties.' "

(Citations omitted.) The defendant in *Panduro* sought dismissal of an interlocutory appeal in his criminal prosecution because he had been deported and it was uncertain whether he would ever return to the United States or be brought to trial. *Id.* at 182. We noted that

> "the relief that the state seeks—admission of its evidence against defendant—is real and concrete, not abstract or hypothetical and will, as a matter of law, alter the state's rights and defendant's obligations. The possibility exists that defendant may not return to the United States, but to base our determination of mootness on that possibility would be speculative."

*Id.* at 183.

In contrast, the Oregon Supreme Court in *Brumnett v. PSRB*, 315 Or 402, 404, 407, 848 P2d 1194 (1993), held that the petitioner's case was moot where he had challenged his confinement by the Psychiatric Security Review Board (PSRB) and the PSRB had released him unconditionally while review was pending. The petitioner argued that his case was not moot, because he was still subject to a statutory obligation to pay all or part of the costs of his care. *Id.* at 404. The state, however, had not assessed, attempted to assess, or started any proceeding to assess any amount against the petitioner. *Id.* at 406. The court held:

> "The mere possibility that the state might seek such an order at some future date is not sufficient to make dismissal inappropriate. The state has not said that it intends to seek reimbursement from petitioner. Rather, one representative of the state has asserted only that it *might* do so some time

in the future. The moving party has carried its burden to establish that the case is moot."

*Id.* at 407 (emphasis in original).

 Here, in light of the state's concession at oral argument that it cannot retrieve the released marijuana, any determination about the lawfulness of the trial court's order would have no practical effect on the parties. The state's requested relief in this appeal is to "vacate the Order For Return and remand this case with directions for the trial court to deny defendant's motion for release of the marijuana to the cardholders." Yet, the state has conceded that an order by this court would not provide the state with relief as to the already released marijuana. Given the concession by the state at oral argument—that "the reality is that we can't get that marijuana back that has been released to the cardholders"—there is a near certainty, and not just a mere possibility, that the released marijuana could not be retrieved. Thus, the circumstances before us are not similar to those of *Panduro*—where only a possibility existed that the relief granted would have no practical effect on the parties—and a determination of mootness based on the state's concession is not speculative. Thus, we hold that any controversy about the released marijuana is moot.[4]

The dissent states that this case is not moot because there remains the pending criminal prosecution against defendant. The dissent notes that the state was entitled to offer into evidence against defendant the marijuana that the trial court ordered released. In addition, the dissent states that the case is not moot because the amount of marijuana defendant possessed remains an issue.[5] 232 Or App at 525-26 (Edmonds, P. J., dissenting). The indictment in this case

---

[4] Because the case is moot, we do not consider the sheriff's separate argument that federal law preempts the OMMA.

[5] While the state did not have to accept defendant's stipulation as to the quantity of marijuana released and while acknowledging that it is the state's prerogative to determine how to prove the allegation in the indictment that defendant manufactured, delivered, or possessed 150 or more grams of marijuana, the state never has argued that it would be unable to prove the allegations in the indictment because the trial court ordered the release of eight-ounce packages to three individuals.

alleged that defendant manufactured, delivered, or possessed 150 or more grams of marijuana. The trial court's order required the sheriff to return three eight-ounce packages of "usable packaged marijuana," for a total of 1.5 pounds. The record is not clear regarding how many pounds of marijuana were seized from defendant, but the record does indicate that the state still retained a lot of marijuana. We take judicial notice that eight ounces is approximately 227 grams. The trial court ordered the sheriff to release more than 678 grams of marijuana. That amount of marijuana is sufficient to prove that defendant possessed, manufactured, or delivered 150 or more grams of marijuana as alleged in the indictment.

The state's theory at oral argument as to why this case is not moot rested not on the written order entered by the trial court, but on an oral comment that the trial court made at the original motion hearing. As noted above, the trial court had stated:

"What I want is eight ounces returned to each of the three participants and then later on, if it doesn't come to trial in a timely way they can apply for more if it's still there and * * * they have to stipulate to quality photography of what was removed as a condition of getting it."

Based on that comment, the state contended at oral argument:

"The theory that we had that this case is not moot is the fact that * * * the sheriff still has some [marijuana] and that based on this order at some time in the future the claimants can, or the cardholders can, ask for additional disbursements of the marijuana that is being held by the sheriff."

In addressing that contention by the state, we first pause to recognize that the trial court's oral comment pertaining to future applications for disbursements was not incorporated into the written order from which the state appeals. And, just as importantly, the state has indicated that the cardholders have not yet made such applications. Therefore, we conclude that, as in *Brumnett*—where the mere possibility that the state could seek reimbursement from the defendant failed to save the case from being moot—

the mere possibility here that the cardholders might apply for additional disbursements of marijuana at some future date is insufficient to make dismissal on mootness grounds inappropriate.

■ Finally, we reach the inquiry of ripeness. In *McIntire v. Forbes*, 322 Or 426, 434, 909 P2d 846 (1996) (quoting *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982)), the court stated, "For a claim to be justiciable, '[t]he controversy must involve present facts as opposed to a dispute which is based on future events of a hypothetical issue.' " As noted above, the cardholders here have not yet indicated that they intend to make any applications for future disbursements of the marijuana. Any dispute over the marijuana still being held by the sheriff would therefore be based on future events of a hypothetical nature. As such, the issue that the state raises as to the marijuana that is still in the sheriff's possession simply is not ripe at this time.

Appeal dismissed.

**SERCOMBE, J.,** concurring.

I join in the opinion and agree that the case is not justiciable in light of the state's concession that the marijuana distributed to the cardholders cannot be retrieved. I write separately to counter the dissent's analysis of the merits of the appeal. The question of statutory construction presented by the parties is whether "the person from whom the marijuana * * * was seized" described in the text of ORS 475.323(2)—*i.e.*, "the person" to whom the marijuana must be returned—refers only to the person who had physical possession of the marijuana at the time of seizure or includes third persons, such as cardholders, who were not in actual possession of the marijuana but who may have a limited property interest in it. If the merits of this case were reached, I would hold that "the person" described in text of ORS 475.323(2) refers only to the person who had physical possession of the marijuana at the time of seizure. Accordingly, I would reverse the trial court's order on the grounds that it lacked the authority to order the return of marijuana to the cardholders, irrespective of whether the district attorney made a determination not to prosecute them.

The dissent reasons that ORS 475.304(5) and ORS 475.309(1)(b) confer on cardholders possessory and ownership interests in the medical marijuana at a grow site and that, when read together with ORS 475.323(2), those statutes "evidence the legislature's intent that a cardholder is among the 'persons' to whom seized medical marijuana could be returned under the authority granted by the statute." 252 Or App at 531 (Edmonds, P. J., dissenting). The property interest created under ORS 475.304(5), however, is not referenced in the part of ORS 475.323(2) at issue.

ORS 475.304(5) provides:

"All usable marijuana, plants, seedlings and seeds associated with the production of marijuana for a registry identification cardholder by a person responsible for a marijuana grow site are the property of the registry identification cardholder and must be provided to the registry identification cardholder upon request."

ORS 475.304(5) is part of a statute that establishes the marijuana grow site registration system and rules. Properly framed in that context, ORS 475.304(5) establishes, as between a cardholder and a person responsible for a grow site, that the cardholder is the owner of the medical marijuana. The statute plainly provides that the marijuana in production at a grow site "must be provided to the registry identification cardholder" by the "person responsible for a marijuana grow site." By its terms, ORS 475.304(5) clarifies who owns the marijuana in order to grant the cardholder the right to obtain the marijuana from the grower on request. Because that statutory provision bears exclusively on the relationship between cardholder and grower, it has limited value in evaluating the obligation of a law enforcement officer to return seized marijuana under ORS 475.323(2).

ORS 475.309(1)(b) is even less material to the analysis. ORS 475.309(1) provides:

"Except as provided in ORS 475.316, 475.320 and 475.342, a person engaged in or assisting in the medical use of marijuana is excepted from the criminal laws of the state for possession, delivery or production of marijuana, aiding and abetting another in the possession, delivery or production of marijuana or any other criminal offense in which

possession, delivery or production of marijuana is an element if the following conditions have been satisfied:

"(a) The person holds a registry identification card issued pursuant to this section, has applied for a registry identification card pursuant to subsection (9) of this section, is the designated primary caregiver of the cardholder or applicant, or is the person responsible for a marijuana grow site that is producing marijuana for the cardholder and is registered under ORS 475.304; and

"(b) The person who has a debilitating medical condition, the person's primary caregiver and the person responsible for a marijuana grow site that is producing marijuana for the cardholder and is registered under ORS 475.304 are collectively in possession of, delivering or producing marijuana for medical use in amounts allowed under ORS 475.320."

ORS 475.309(1)(b) is but one condition that must be met in order for a person to be excepted from the criminal laws of this state that pertain to marijuana offenses. In essence, that subsection requires the person who has a debilitating medical condition, the person's primary caregiver, and the person responsible for a marijuana grow site to be collectively in possession of, delivering, or producing medical marijuana in order to qualify for immunity from criminal prosecution. That subsection does *not* affirmatively confer on a cardholder a possessory interest in the marijuana as the dissent suggests. *See* 232 Or App at 531 (Edmonds, P. J., dissenting).

Because I do not find the text of either ORS 475.304(5) or ORS 475.309(1)(b) to be helpful in the statutory construction of ORS 475.323(2), I would begin and end the analysis of ORS 475.323(2) with that provision's plain text. ORS 475.323(2) provides:

"Any property interest possessed, owned or used in connection with the medical use of marijuana or acts incidental to the medical use of marijuana that has been seized by state or local law enforcement officers may not be harmed, neglected, injured or destroyed while in the possession of any law enforcement agency. A law enforcement agency has no responsibility to maintain live marijuana plants lawfully seized. No such property interest may be forfeited under any provision of law providing for the forfeiture of

property other than as a sentence imposed after conviction of a criminal offense. *Usable marijuana and paraphernalia used to administer marijuana that was seized by any law enforcement office shall be returned immediately upon a determination by the district attorney in whose county the property was seized, or the district attorney's designee, that the person from whom the marijuana or paraphernalia used to administer marijuana was seized is entitled to the protections contained in ORS 475.300 to 475.346.* The determination may be evidenced, for example, by a decision not to prosecute, the dismissal of charges or acquittal."

(Emphasis added.)

First, it is worth noting that the highlighted text does not explicitly refer to whom the marijuana shall be returned—the verb "returned" is not followed by an object. But the plain meaning of "return" includes "to pass back to an earlier possessor" and "to bring, send, or put (a person or thing) back to or in a former position." *Webster's Third New Int'l Dictionary* 1941 (unabridged ed 2002). The marijuana, in this sense, can only be "returned" to a person who formerly had physical possession of the plants. When marijuana is seized from a grower, as here, the cardholders never had physical possession of the usable marijuana, and the plants cannot be "returned" to them.

Second, the only other indication in the statutory text as to the identity of the intended recipient of the returned marijuana lies in the statutory condition that the marijuana shall be returned on a determination by the district attorney that "the person from whom the marijuana * * * was seized" is entitled to the protections of the Oregon Medical Marijuana Act (OMMA). On its face, the statute allows a return of seized marijuana if the person from whom the marijuana is seized is in compliance with the OMMA, as shown by district attorney action on any charges brought ("for example, by a decision not to prosecute, the dismissal of charges or acquittal, ORS 475.323(2)"). I would therefore infer from that condition that the legislature intended the marijuana be returned to "the person from whom [it] * * * was seized." *See id.*

The legislature, in enacting ORS 475.323(2), chose to use the words "*the person* from whom the marijuana * * * was seized," rather than the words "a person" or "any person." By using the definitive article "the," rather than an indefinite article, the legislature has indicated its intent that the obligation of a law enforcement officer to return seized marijuana extends only to one person. Put another way, the text of the statute suggests that marijuana is seized only from one person, the particular person who had physical possession of the marijuana at the time of seizure and not any one of a number of persons who might have separate legal interests in the marijuana. Here, the particular person who had physical possession of the marijuana at the time of seizure was defendant.

Finally, the construction of ORS 475.323(2) advanced by the dissent is incomplete. The dissent does not analyze whether the statute requires that the district attorney decide if *all* persons with an interest in the seized marijuana are entitled to the protections of the OMMA in order to return the seized property. If "the person from whom the marijuana * * * was seized" means any number of persons, as construed by the dissent, *see* 232 Or App at 531 (Edmonds, P. J., dissenting), then how would a district attorney determine the existence of an entitlement "to the protections contained in ORS 475.300 to 475.346" when that determination differed for each person? If the marijuana was seized both from a grower who grew more crop than allowed under the OMMA and from a cardholder who operated consistently with the law, then one person from whom the marijuana was seized, the cardholder, would be "entitled to the protections contained in [the OMMA]," but another person from whom the marijuana was seized, the grower, would not be so entitled. The dissent assumes that the marijuana can be returned to any person with a property interest in the marijuana who complies with the law, even though the district attorney can also make a determination in that instance that a "person from whom the marijuana * * * was seized is [not] entitled to the protections contained in [the OMMA]." In my view, if "the person" means many persons, the statute should be construed to require the district attorney to make the entitlement determinations as to all persons with an interest in the marijuana.

Therefore, I would conclude that the trial court's authority to order the return of the seized marijuana was limited only to ordering the return of the marijuana to defendant, if the district attorney had determined that defendant was entitled to the protections of the OMMA. Because the court had no authority under ORS 475.323(2) to order the return of the marijuana to the cardholders, I would hold that it erred in doing so.

For the reasons expressed above, if I were to reach the merits of this case, I would concur in the result reached by the dissent, but not in its reasoning.

**EDMONDS, P. J.,** dissenting.

I disagree with the majority's ruling that the state's appeal is moot because the order to release some of the seized marijuana to the cardholders has been executed and the state concedes that it could not retrieve any of that marijuana from the cardholders, even if it is successful on appeal. The majority's reasoning effectively denies the state a statutory right to appeal because it obeyed the trial court's order. I would also reverse the trial court's order releasing the marijuana to the cardholders in this case for the reasons more fully explained below.

"[A] case becomes moot when, because of a change of circumstances before review, a judicial decision would resolve a merely abstract question rather than an actual and substantial controversy." *State v. Lavitsky*, 158 Or App 660, 663, 976 P2d 82 (1999). This appeal involves an actual and substantial controversy in a pending criminal prosecution against defendant that has yet to be tried. The order on appeal releases part of the evidence that the state was entitled to offer into evidence in an effort to prove that defendant was in possession of more marijuana than that permitted under the Oregon Medical Marijuana Act (OMMA) as charged in the indictment against defendant. I submit that a pretrial order of the kind in this case does not become moot for purposes of appeal merely because the sheriff did what he was ordered to do. Otherwise, law enforcement agencies would be required to disobey trial court orders in these kinds of cases in order to preserve their right to appeal.

The right of the state to appeal the trial court's order is a statutory right, as are the rights of cardholders to possess medical marijuana under the OMMA. But under the majority's reasoning, the state's right to appeal is frustrated and rendered meaningless. It is inconceivable that the legislature, having provided for the right of the state to appeal pretrial orders, could also have intended that an appeal could be mooted by a court-ordered return of seized medical marijuana before the appeal could be adjudicated. At a minimum, there is an actual and live controversy regarding how the legislature intended the statutory rights of the state and cardholders to be harmonized.

Moreover, an actual and substantial controversy continues to exist in this case because of the continuing viability of the court's order. An issue on appeal becomes abstract when, because of circumstances, it no longer has any relationship to any remaining issue in the case. In this case, the quantity of marijuana that defendant possessed has ongoing significance in light of defendant's status as a medical marijuana grower and caregiver and the state's claim that he was in possession of amounts of marijuana that exceeded his legal authorization. The majority disagrees. In its view, as a justification for declaring the issue moot, it posits that the amount of marijuana held by the sheriff "is sufficient to prove that defendant possessed, manufactured, or delivered 150 or more grams of marijuana as alleged in the indictment." 232 Or App at 519. Respectfully, the majority has no factual basis on which to make its assertion. Indeed, the majority concedes that "[t]he record is not clear regarding how many pounds of marijuana were seized from defendant * * *." 232 Or App at 519. Moreover, the implication of the majority's surmise is that the judicial branch of government can dictate to the executive branch of government the amount of evidence that is sufficient for the state to successfully prosecute a defendant when a trial has yet to occur. Again, respectfully, that kind of overreaching, even if not a violation of the separation of powers doctrine, interferes with the province of the state to carry out its exclusive, constitutionally mandated authority to prosecute criminal conduct. It is up to the prosecution, not the courts, to decide how much evidence is needed to prosecute a defendant.

Moreover, the emphasis on the amount of evidence retained by the prosecution as a rationale for declaring the state's appeal moot tends to beg the question of whether there remains a substantial and live controversy. I am aware of no precedent from either appellate court in this state that has determined mootness based on the loss of evidence due to obedience to a court order. The fact that the physical evidence cannot be retrieved from the cardholders does not render the question abstract or hypothetical because the proper focus for determining mootness is on the lawfulness of the trial court's order, an order that remains in effect in a pending case in the trial court. Presumably, the trial court will not reverse its own ruling and will continue to follow it throughout the pendency of the case. As the state pointed out in oral argument, nothing in the trial court's ruling prevents defendant from relying on the earlier order and successfully requesting that additional disbursements of the seized marijuana be made to the cardholders. As importantly, the trial court's ruling establishes a precedent—not only for this case but for other similar cases within the judicial district within which the trial court sits. Under the court's ruling, each and every time a seizure of medical marijuana is made by law enforcement officers within the court's judicial district, the ruling establishes the precedent that at least some of the marijuana, upon request by a defendant, must be released to cardholders before trial occurs. In that light, the state's concern that the trial court's ruling infringes on the ability of the state to prosecute is a valid concern and creates a live controversy between the parties and any similarly situated parties. For all of the above reasons, I disagree with the majority that this appeal is moot.

As to the merits of the state's appeal, I would reason as follows. In this criminal action charging defendant with the unlawful manufacture of marijuana, ORS 475.856, the unlawful delivery of marijuana, ORS 475.860, and unlawful possession of marijuana, ORS 475.864, in 2006, the state appeals a pretrial order entered by the trial court that directed the sheriff to "return Eight (8) ounces of usable packaged marijuana seized from [defendant] to each of the three patients for whom [defendant] was growing marijuana under

the Oregon Medical Marijuana Act."[1] On appeal, the state argues that the trial court lacked the statutory authority to enter the orders.

Defendant is a designated caregiver and grower for multiple persons who are cardholders under the OMMA. A substantial amount of marijuana was seized from defendant's property after Douglas County deputies executed a search warrant.[2] That evidence led to the above charges against defendant. Before trial, defendant moved to have some or all of the seized marijuana released to the duly licensed cardholders for whom defendant is the designated grower and caregiver. The motion recites that defendant was the lawful caregiver for a number of registered cardholders, that the owners of the marijuana were the patients for whom defendant grew marijuana, and that there were approximately three-and-one-half pounds of dried usable marijuana seized from defendant's residence. The motion concludes, "This Motion seeks to have the dried usable marijuana returned to the patients." At the hearing on the motion, three registered cardholders that had designated defendant as their grower and caregiver testified to their need for the marijuana.[3] Although the state and the Douglas County Sheriff opposed the motion, the trial court granted it to the extent recited above.

On appeal, the state argues that, under ORS 475.323(5), seized marijuana can be returned to cardholders only if the cardholder is the person from whom the marijuana

---

[1] Previously, this court had determined by order of the Chief Judge that it has jurisdiction over the state's appeal under ORS 19.205(5).

[2] No party presented evidence of the particular amount of usable marijuana seized by the sheriff. Defense counsel represented to the trial court that there was "about a pound and half to two pounds." Later, counsel conceded that "upwards of thirty" plants were seized, and "lots of bags of leaves." On the other hand, the prosecutor told the court that

"[t]here is actually a huge amount of usable marijuana in this case. I know what counsel is talking about. Counsel is talking about the marijuana bud. * * * I do not recall exactly how many pounds but, under the statute of usable marijuana, leaves are included in that. * * * But so I think in terms of statutory definitions, there is a much larger amount of usable marijuana than just one, two, or three pounds."

[3] The cardholders testified both to their debilitating medical conditions that led to them being cardholders and their difficulty in legally obtaining medical marijuana from other sources.

was seized. Alternatively, the state contends that the cardholders did not request the return of the marijuana, nor did the Douglas County District Attorney make a determination that the cardholders were entitled to the return of the marijuana seized as required by ORS 475.323(2). Accordingly, in the state's view, the court had no authority under the OMMA to order its return to them.

Defendant responds that ORS 475.304(5) confers a property interest in the marijuana to the cardholders, and, accordingly, the marijuana was seized from the cardholders, as well as from defendant. Because the marijuana was seized from the cardholders and the district attorney has made no effort on the record before us to prosecute the cardholders, defendant concludes that the marijuana must be returned to the cardholders pursuant to ORS 475.323(2).[4]

Defendant's motion for the return of the marijuana is based on ORS 475.304(5), which provides,

> "All usable marijuana, plants, seedlings and seeds associated with the production of marijuana for a registry identification cardholder by a person responsible for a marijuana grow site are the property of the registry identification cardholder and must be provided to the registry identification cardholder upon request."

Additionally, ORS 475.323(2) provides,

> "Any property interest possessed, owned or used in connection with the medical use of marijuana or acts incidental to the medical use of marijuana that has been seized by state or local law enforcement officers may not be harmed, neglected, injured or destroyed while in the possession of any law enforcement agency. A law enforcement agency has no responsibility to maintain live marijuana plants lawfully seized. No such property interest may be forfeited under any provision of law providing for the forfeiture of property other than as a sentence imposed after conviction of a criminal offense. Usable marijuana and paraphernalia used to administer marijuana that was seized by any law

---

[4] Defendant also argues that some of the issues raised by the state on appeal were not preserved in the trial court as required by ORAP 5.45. Our review of the record persuades me that the trial court and defendant had an adequate opportunity to address all of the issues raised by the state on appeal.

enforcement office shall be returned immediately upon a determination by the district attorney in whose county the property was seized, or the district attorney's designee, that the person from whom the marijuana or paraphernalia used to administer marijuana was seized is entitled to the *protections contained in ORS 475.300 to 475.346.* The determination may be evidenced, for example, by a decision not to prosecute, the dismissal of charges or acquittal."

As framed, the parties' arguments present a question of statutory interpretation, and our initial task is to discern the legislature's intent in that regard. Under *State v. Gaines*, 346 Or 160, 171-72, 175, 206 P3d 1042 (2009), the legislature's intent is ascertained by an examination of the text and context of ORS 475.323(2) and ORS 475.304(5) and the legislative history underlying the OMMA, if offered or helpful.[5]

ORS 475.304(5) and ORS 475.323(2) operate in concert with the other statutes in the OMMA, including ORS 475.309(1)(b), which provides,

"The person who has a debilitating medical condition, the person's primary caregiver and the person responsible for a marijuana grow site that is producing marijuana for the cardholder and is registered under ORS 475.304 are collectively in possession of, delivering or producing marijuana for medical use in amounts allowed under ORS 475.320."

ORS 475.304(5) provides that the usable marijuana, plants, seedlings, and seeds at a registered grow site are the property of the cardholder. ORS 475.309(1)(b) confers possessory interests or constructive possession rights to marijuana at a grow site to cardholders and primary caregivers, even when those persons are not in actual possession of the medical marijuana. ORS 475.323(2) refers to the seizure of "[a]ny property interest possessed, owned or used in connection with the medical use of marijuana" from the persons who are entitled to the protections contained in ORS 475.300 to 475.346.

---

[5] ORS 475.304(5) was enacted in 2005 as part of Oregon Laws 2005, chapter 822, and neither party has cited any legislative history that has been helpful to our analysis.

In light of the above statutes, I turn back to the state's argument that ORS 475.323(2) authorizes only the return of marijuana to defendant because he was the only person from whom it was seized. The breadth of the language in ORS 475.323(2) regarding "any property interest" in connection with the medical use of marijuana is determinative of the legislature's intent regarding the issue framed by the state's argument. Under ORS 475.304(5) and ORS 475.309(1)(b), the ownership and possessory interests held by cardholders in medical marijuana at a registered grow site are also protected under the OMMA. Those interests were invaded by the officers when they seized the marijuana from the grow site.[6] Because ORS 475.304(5) and ORS 475.309(1)(b) confer possessory and ownership interests in the marijuana to cardholders, those statutes, when read together with ORS 475.323(2), evidence the legislature's intent that a cardholder is among the "persons" to whom seized medical marijuana could be returned under the authority granted by the statute. In other words, I would hold, contrary to the state's argument, that even though the marijuana was not seized from the physical possession of the cardholders, ORS 475.323(2) authorizes the release of medical marijuana to cardholders if the other conditions of the statute are satisfied.

The remaining issue under ORS 475.323(2) is whether the district attorney or his designee has made a determination that the person from whom the marijuana was seized is entitled to the protections contained in ORS 475.300 to 475.346. According to the statute, "[t]he determination may be evidenced, for example, by a decision not to prosecute, the dismissal of charges or acquittal." In the trial court, the district attorney opposed defendant's motion on the ground that it needed the seized marijuana as evidence to prosecute defendant. My review of the record fails to disclose any finding by the trial court that the district attorney made

---

[6] Generally, a "seizure" under ORS 475.323(2) occurs when there is a significant interference with a person's possessory or ownership interest in property. *State v. Juarez-Godinez*, 326 Or 1, 6, 942 P2d 772 (1997) (defining a "seizure" for purposes of Article I, section 9, of the Oregon Constitution). Because the word "seizure" has a defined legal meaning, presumably, the legislature was referring to that definition when it used the word "seized" in ORS 475.323(2).

the determination required by ORS 475.323(2). Because that finding is a statutory predicate to the return of the marijuana under ORS 475.323(2), and the trial court failed to make such a finding, I would reverse the court's order.[7]

Accordingly, I dissent.

---

[7] The authority under ORS 475.323(2) to return medical marijuana that has been seized has a statutory corollary in ORS 133.643(4), which provides that things subject to seizure may be returned to a movant "upon the court's determination that they are no longer needed for evidentiary purposes." Both ORS 475.323(2) and ORS 133.643(4) are intended to vest district attorneys with the authority to preserve seized evidence for purposes of trial and until the evidence is no longer needed.